IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

| | | |
|---|---|---|
| GARY FILER, a widower, on his own behalf, and also separately for and on behalf of all surviving statutory wrongful death beneficiaries of BARBARA LINEHAN, deceased, including ALEXANDRA FILER, surviving daughter, and LINEHAN FILER, surviving daughter, | ) ) ) ) ) ) ) ) ) | 2 CA-CV 2005-0129 DEPARTMENT A  O P I N I O N |
| Plaintiff/Appellant, | ) ) | |
| v. | ) ) | |
| TOHONO O'ODHAM NATION GAMING ENTERPRISE, dba DESERT DIAMOND CASINO; and EUGENE ROSE, liquor license holder for the TOHONO O'ODHAM NATION GAMING ENTERPRISE dba DESERT DIAMOND CASINO, | ) ) ) ) ) ) ) ) | |
| Defendants/Appellees. | ) ) | |

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. C2004-5666

Honorable Deborah Bernini, Judge

AFFIRMED

Goldberg & Osborne
  By David J. Diamond and D. Greg Sakall                                              Tucson
                                                            Attorneys for Plaintiff/Appellant

Jones, Skelton & Hochuli, P.L.C.
  By Eileen Dennis GilBride                                    Phoenix

    and

Daniel J. Quigley                                              Tucson
                                    Attorneys for Defendants/Appellees

---

P E L A N D E R, Chief Judge.

¶1        Plaintiff/appellant Gary Filer filed this personal injury and wrongful death action in superior court against the Tohono O'odham Gaming Enterprise ("Gaming Enterprise"), doing business as Desert Diamond Casino, and several of its employees. On the Gaming Enterprise's motion, the trial court dismissed the action, ruling it "lack[ed] jurisdiction to hear the matter" because the Gaming Enterprise "ha[d] not waived its sovereign immunity." On appeal, Filer argues the court erred because no tribal sovereign immunity exists against a dram shop action filed pursuant to A.R.S. § 4-311.[1] Although we find the issue a close one, we affirm.

## BACKGROUND

¶2        The Gaming Enterprise's motion to dismiss, and presumably the trial court's order of dismissal, were grounded on Rules 12(b)(1), (2), and (6), Ariz. R. Civ. P., 16

---

[1]Under A.R.S. § 4-311(A), a liquor licensee in Arizona can be held civilly liable if it "sold spirituous liquor . . . to a purchaser who was obviously intoxicated" and the purchaser's consumption of the liquor "was a proximate cause of the injury, death or property damage." *See generally Callender v. MCO Props.*, 180 Ariz. 435, 885 P.2d 123 (App. 1994).

2

A.R.S., Pt. 1. Therefore, "we accept as true the allegations in plaintiff's complaint." *Wallace v. Casa Grande Union High Sch. Dist. No. 82 Bd. of Governors*, 184 Ariz. 419, 424, 909 P.2d 486, 491 (App. 1995); *see also Fid. Sec. Life Ins. Co. v. State of Ariz., Dep't of Ins.*, 191 Ariz. 222, ¶ 4, 954 P.2d 580, 582 (1998) (in reviewing trial court's dismissal of complaint on ground of immunity, "we assume as true the facts alleged in the complaint"); *Chamberlain v. Mathis*, 151 Ariz. 551, 554, 729 P.2d 905, 908 (1986) (same).[2]

¶3       In his complaint, Filer alleged that, in July 2004, Gaming Enterprise employees had "furnished excessive quantities of alcoholic beverages to Douglas Michael Levitski while he was at the Desert Diamond Casino," in violation of § 4-311. Filer further alleged Levitski had then driven his vehicle onto Interstate 10, traveling westbound in the eastbound lanes, where it collided with Filer's vehicle, injuring him and killing his wife. In October 2004, Filer brought this action, alleging claims for wrongful death, negligence, and statutory dram-shop liability against the Gaming Enterprise, the individual who held its liquor license, and fictitiously named Casino employees who had served alcohol to Levitski.

---

[2]This is not a case in which "the existence of immunity turns on disputed factual issues," and, therefore, there is no need for a trier to "determine[] the facts [before] the court then determines whether those facts are sufficient to establish immunity." *Chamberlain*, 151 Ariz. at 554, 729 P.2d at 908; *see also Bonner v. Minico, Inc.*, 159 Ariz. 246, 253-54, 766 P.2d 598, 605-06 (1988); *Swichtenberg v. Brimer*, 171 Ariz. 77, 82, 828 P.2d 1218, 1223 (App. 1991).

**¶4**        The Gaming Enterprise moved to dismiss the action against all defendants based on sovereign immunity. In a signed minute entry, the trial court granted the motion, dismissing the action without prejudice, on that basis.[3] We have jurisdiction pursuant to A.R.S. §§ 12-120.21(A)(1) and 12-2101(B). *See Focal Point, Inc. v. Court of Appeals*, 149 Ariz. 128, 129-30, 717 P.2d 432, 433-34 (1986) (minute entry disposing of case appealable if written, signed by a judge, and filed with clerk of court); *State v. Birmingham*, 96 Ariz. 109, 111, 392 P.2d 775, 776 (1969) ("The word 'order' is synonymous with the words 'judgment' and 'decree' [for purposes of §12-2101].").

DISCUSSION

## I. Tribal Immunity

**¶5**        As noted above, the trial court found that "the tribe has not waived its sovereign immunity for purposes of the Plaintiff's lawsuit," thus implicitly ruling that the Gaming Enterprise and its employees were protected by such immunity. Filer argues "the trial court err[ed] when it found that the Gaming Enterprise . . . was vested with tribal sovereign immunity and, thus, not subject to suit for a statutory dram shop action in an Arizona state court." We review de novo the question whether the doctrine of sovereign immunity applies to divest the Arizona courts of jurisdiction over Filer's claims. *Linneen v. Gila River Indian Cmty.*, 276 F.3d 489, 492 (9th Cir. 2002); *see also Mitchell v.*

---

[3]Presumably the trial court dismissed the case without prejudice so that Filer could re-file his action in the Tohono O'odham Nation's tribal court, which he then did. That action apparently is pending.

*Gamble*, 207 Ariz. 364, ¶ 6, 86 P.3d 944, 947 (App. 2004) (order dismissing case for lack of subject matter jurisdiction reviewed de novo).

¶6 Filer first contends that, "[b]ecause the claims raised . . . involve the service of alcohol . . . pursuant to an Arizona Liquor License . . . , tribal sovereign immunity cannot defeat the jurisdiction of an Arizona state court to hear this lawsuit." The parties do not dispute that the Gaming Enterprise, as a subordinate economic enterprise of the Tohono O'odham Nation, is entitled to the same immunity as the Nation. *See generally Dixon v. Picopa Constr. Co.*, 160 Ariz. 251, 772 P.2d 1104 (1989). They also agree on the well-settled principle that "tribal immunity is a matter of federal law and is not subject to diminution by the States." *Kiowa Tribe v. Mfg. Techs., Inc.*, 523 U.S. 751, 756, 118 S. Ct. 1700, 1703, 140 L. Ed. 2d 981, 986 (1998). And, sovereign immunity bars lawsuits against Indian tribes in state court "absent a clear waiver by the tribe or congressional abrogation." *Okla. Tax Comm'n v. Citizen Band Potawatomi Indian Tribe*, 498 U.S. 505, 509, 111 S. Ct. 905, 909, 112 L. Ed. 2d 1112, 1119 (1991). "Arizona courts have also recognized the doctrine of tribal sovereign immunity." *Val/Del, Inc. v. Superior Court*, 145 Ariz. 558, 560, 703 P.2d 502, 504 (App. 1985).

¶7 As Filer correctly points out, "Congress authorized state regulation of liquor transactions by enacting 18 U.S.C. § 1161." Enacted in 1953, that section provides that the federal prohibition of liquor on tribal lands

> shall not apply within any area that is not Indian country, nor
> to any act or transaction within any area of Indian country

5

provided such act or transaction is in conformity both with the laws of the State in which such act or transaction occurs and with an ordinance duly adopted by the tribe having jurisdiction over such area of Indian country, certified by the Secretary of the Interior, and published in the Federal Register.

¶8 In *Rice v. Rehner*, 463 U.S. 713, 103 S. Ct. 3291, 77 L. Ed. 2d 961 (1983), the Supreme Court addressed that statute and the states' ability to regulate liquor on tribal land.[4] The Court found that Indian tribes lacked "a tradition of self-government in the area of liquor regulation" and that, "[b]y enacting § 1161, Congress intended to delegate a portion of its authority to the tribes as well as to the States, so as to fill the void that would be created by the absence of the discriminatory federal prohibition [of alcohol on Indian lands]." *Rice*, 463 U.S. at 731, 733, 103 S. Ct. at 3302, 3303, 77 L. Ed. 2d at 978, 979. Thus, the Court held, the states could "regulate the use and distribution of alcoholic beverages in Indian country" by requiring a state liquor license. *Rice*, 463 U.S. at 715, 103 S. Ct. at 3293-94, 77 L. Ed. 2d at 967.

¶9 The Tohono O'odham Nation has adopted its own Alcoholic Beverages Licensing and Control Regulations. A person violates those regulations by failing "to comply with the law of the State of Arizona applicable under 18 U.S.C. § 1161." Filer thus argues, apparently without disagreement, that "the Gaming Enterprise must comply with

---

[4]As the Court stated in *Rice*, "[t]he question presented by [that] case [was] whether the State of California may require a federally licensed Indian trader, who operates a general store on an Indian reservation, to obtain a state liquor license in order to sell liquor for off-premises consumption." 463 U.S. at 715, 103 S. Ct. at 3293, 77 L. Ed. 2d at 967.

6

Arizona's licensing and regulatory system pursuant to 18 U.S.C. § 1161." We agree that, under § 1161 and *Rice*, the Nation and the Gaming Enterprise are subject to alcohol regulation by the state, at least as to Arizona's liquor-licensing requirements. But the question remains whether that also means tribal sovereign immunity is inapplicable to any statutory actions involving alcohol, as Filer broadly asserts, so that the Gaming Enterprise may be liable for damages in a civil dram shop action.

¶10         In addressing that difficult issue of first impression in this state, we must first determine if Arizona's prohibition against a liquor licensee's serving alcohol to an obviously intoxicated person, *see* A.R.S. §§ 4-244(14), 4-311, constitutes regulation by the state under the Supreme Court's interpretation of § 1161 in *Rice*. If so, we must then determine if such regulation can be enforced by a private lawsuit against a tribal entity in state court absent a waiver of immunity. And, if not, we must decide whether the Gaming Enterprise or Congress has expressly waived the Gaming Enterprise's immunity from suit in state court. *See Okla. Tax Comm'n*, 498 U.S. at 509, 111 S. Ct. at 909, 112 L. Ed. 2d at 1119.

¶11         As Filer points out, "[t]here is no controlling law in Arizona" addressing these questions. The Texas Court of Appeals, however, addressed them in *Holguin v. Ysleta Del Sur Pueblo*, 954 S.W.2d 843 (Tex. App. 1997).[5] The court there ultimately held that tribal

[5]Filer also cites *Schram v. Ohar*, No. 114403, 1998 WL 811393 (Conn. Super. Ct. Nov. 16, 1998), an unpublished Connecticut trial court decision that supports him. The Gaming Enterprise responds by citing another unpublished decision, *Greenidge v. Volvo Car Finance, Inc.*, No. X04CV 960119475S, 2000 WL 1281541 (Conn. Super. Ct., Aug. 25, 2000), that rejects *Schram* and supports the Gaming Enterprise. "Rule 28(c), Ariz. R.

Civ. App. P., 17B A.R.S., prohibits the citation of . . . unpublished decisions of any court."
*Burke v. Ariz. State Ret. Sys.*, 206 Ariz. 269, n.6, 77 P.3d 444, 448 n.6 (App. 2003). We
therefore give the Connecticut decisions no consideration. *See Walden Books Co. v. Ariz.
Dep't of*

sovereign immunity applied, had not been waived, and therefore barred "a *private suit* brought under the Texas Dram Shop Act."[6] *Id*. at 854. Before so holding, however, the court in *Holguin* concluded that the Texas dram shop act was a legitimate exercise of the state's regulatory power over alcohol and that the tribe was subject to enforcement of the act by license and permit revocation. *Id*. at 853-54. Similarly, as explained below, we find that § 4-311 falls within the scope of permissible liquor regulation by the State of Arizona.[7]

¶12      Section 4-311 is part of a regulatory scheme set forth in Title 4 of Arizona Revised Statutes. Although § 4-311 is not included within that title's chapter 2, entitled "Regulations and Prohibitions," A.R.S. §§ 4-201 to 4-261, it nonetheless falls within Title 4's broad title of "Alcoholic Beverages." A.R.S. §§ 4-101 to 4-312. And, § 4-244(14), part of the "Regulations and Prohibitions," makes it unlawful to serve spirituous liquor to someone who is "obviously intoxicated"—a basis for the civil action provided in § 4-311. Additionally, a plaintiff who files a dram shop action pursuant to § 4-311 is statutorily required to "file a copy of the complaint with the department [of liquor licenses and control]

*Revenue*, 198 Ariz. 584, ¶ 22, 12 P.3d 809, 814 (App. 2000), *quoting Kriz v. Buckeye Petroleum Co.*, 145 Ariz. 374, 377 n.3, 701 P.2d 1182, 1185 n.3 (1985).

[6]The Texas dram shop statute, Tex. (Alco. Bev.) Code Ann. § 2.02 (West 2005), is very similar to A.R.S. § 4-311.

[7]Because the issue is not squarely before us, we do not address the means available to the State of Arizona to enforce its dram shop statute against the Gaming Enterprise. *See Contempo-Tempe Mobile Home Owners Ass'n v. Steinert*, 144 Ariz. 227, 229, 696 P.2d 1376, 1378 (App. 1985) ("The court is not empowered to decide . . . abstract propositions.").

within ten days after filing the complaint." A.R.S. § 4-302(A). That notice requirement suggests the statutory dram shop action is an integral part of the state's alcohol regulatory scheme.

¶13    As did the *Holguin* court in analyzing the Texas statute, 954 S.W.2d at 853, we find further support for this conclusion in *Eiger v. Garrity*, 246 U.S. 97, 38 S. Ct. 298, 62 L. Ed. 596 (1918). In that case, the Supreme Court ruled that an Illinois dram shop act fell "[u]nder [the state's] broad power over the liquor traffic, and the right to pass legislation to prevent its evils." *Id.* at 102, 38 S. Ct. at 300, 62 L. Ed. at 599. The Arizona Supreme Court has stated, "[T]he police power is inalienable and cannot be surrendered or delegated, by affirmative action, by inaction, by contract, or otherwise." *Indus. Comm'n v. Navajo County*, 64 Ariz. 172, 180, 167 P.2d 113, 117 (1946). But the exercise of police power to which *Eiger* refers is the creation of the statutory cause of action in the first instance—an action taken by the state, not by a private party. *See Holguin*, 954 S.W.2d at 854 ("hold[ing] that a statutory dram shop law that confers standing upon private individuals to sue for damages caused by violations of the state's alcoholic beverage code falls within the exercise of the state's police power"). Therefore, a private dram shop action pursuant to § 4-311 arguably does not constitute an exercise of the state's police power at all but, rather, merely a means of enforcing the statute.

¶14    Even if that is so, however, we agree with the trial court that Filer cannot maintain this action in state court. "There is a difference between the right to demand

compliance with state laws and the means available to enforce them." *Kiowa Tribe*, 523 U.S. at 755, 118 S. Ct. at 1703, 140 L. Ed. 2d at 985. That distinction is recognized by the Ninth Circuit Court of Appeals, which has held that, although the state had "authority to regulate or tax tribal liquor sales," "the state's counterclaim for taxes due [was] barred by sovereign immunity." *Squaxin Island Tribe v. State of Wash.*, 781 F.2d 715, 719, 723 (9th Cir. 1986); *cf. Okla. Tax Comm'n*, 498 U.S. at 512-14, 111 S. Ct. at 910-12, 112 L. Ed. 2d at 1122-23 (state had authority to tax sale of cigarettes to nonmembers, but sovereign immunity barred state from suing tribe to collect taxes owed); *Rice*, 463 U.S. at 720 n.7, 103 S. Ct. at 3296 n.7, 77 L. Ed. 2d at 971 n.7 (recognizing states' power to tax various on-reservation activities).

¶15 Thus, a state's power to regulate certain tribal activities and its ability to bring a lawsuit against a tribe in state or federal court are not necessarily coextensive. That is to say, sovereign immunity may bar the latter but not the former. And a private suit, even if deemed a valid exercise of the state's regulatory power, is subject to the same limitations. As the Gaming Enterprise argues, "[i]f a state cannot directly enforce its alcohol laws against a tribe in a civil suit in federal court, then a private party certainly cannot prosecute a suit for monetary damages against a tribe in state court." *See Holguin*, 954 S.W.2d at 854 ("[A] private cause of action created by the Texas Dram Shop Act does not constitute 'enforcement' of an alcohol-related law that falls within the waiver of tribal immunity.").

**¶16**        Citing *Dixon v. Picopa Construction Co.*, 160 Ariz. 251, 772 P.2d 1104 (1989), Filer also argues "extending tribal sovereign immunity to the Gaming Enterprise . . . is contrary to the federal policies underlying the immunity doctrine," particularly because the Gaming Enterprise carried liability insurance and, therefore, immunity "would not foster the policy of seeking to protect tribal assets."[8]  In *Dixon*, our supreme court noted the following federal policies underlying the immunity doctrine:  "[p]rotection of tribal assets, preservation of tribal cultural autonomy, preservation of tribal self-determination, and promotion of commercial dealings between Indians and non-Indians." *Id.* at 258, 772 P.2d at 1111.

**¶17**        Filer argues "tribal cultural autonomy and self-determination are not hindered by an Arizona state court exercising jurisdiction over this case" because "it appears that the Gaming Enterprise was organized for purely commercial reasons."  But the Gaming Enterprise's charter, to which Filer cites, states that the purpose of the Enterprise is, inter alia, "to achieve economic self-sufficiency" and to provide gaming within the Nation that is conducted with "honesty and integrity."  On this record, we cannot say those purposes are "purely commercial," as Filer urges.

---

[8]As does the Gaming Enterprise, we question the applicability of *Dixon*'s policy discussion in this context. *Dixon* addressed whether the defendant construction company, Picopa, was a subordinate economic organization of the tribe, not whether tribal immunity barred a particular cause of action.  The court held "Picopa [was] not a subordinate economic organization . . . and hence may not assert the Community's tribal immunity." 160 Ariz. at 259, 772 P.2d at 1112.  This case presents no such issues.  Nonetheless, the language of *Dixon*'s dicta is sufficiently broad to merit discussion here.

¶18 Additionally, unlike in *Dixon*, Filer has not established that the Gaming Enterprise's corporate charter "exonerates the [Nation] from corporate liability." *Id.* Absent such an exoneration, we cannot give the Gaming Enterprise's corporate insurance the same weight the *Dixon* court gave to Picopa's corporate liability insurance. *Id.* We simply have no basis for concluding that exposing the Gaming Enterprise to statutory dram shop actions would not affect tribal assets in some way. In contrast to *Dixon*, an examination of federal policies here does not clearly dictate against applying tribal sovereign immunity in this context.

¶19 As noted above, tribal immunity generally exists unless expressly abrogated by Congress or waived by the tribe. *Okla. Tax Comm'n*, 498 U.S. at 509, 111 S. Ct. at 909, 112 L. Ed. 2d at 1119. A Congressional waiver of tribal immunity must be unequivocal and explicit. *Val/Del*, 145 Ariz. at 560, 703 P.2d at 504; *cf. Lane v. Pena*, 518 U.S. 187, 192, 116 S. Ct. 2092, 2096, 135 L. Ed. 2d 486, 492 (1996). Section 1161, 18 U.S.C., however, does not even mention tribal immunity, much less waive it for private dram shop actions.

¶20 This leaves the question whether the Gaming Enterprise waived its immunity against such actions. Although the tribe may have impliedly waived its immunity by applying for and obtaining an Arizona liquor license, thus subjecting itself to applicable state law, including § 4-311, that waiver was neither clear nor express. *See Okla. Tax Comm'n*, 498 U.S. at 509, 111 S. Ct. at 909, 112 L. Ed. 2d at 1119 ("Suits against Indian tribes are . . . barred by sovereign immunity absent a clear waiver by the tribe."); *see also C & L*

13

*Enters. v. Citizen Band Potawatomi Indian Tribe*, 532 U.S. 411, 418, 121 S. Ct. 1589, 1594, 149 L. Ed. 2d 623, 631 (2001); *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58, 98 S. Ct. 1670, 1677, 56 L. Ed. 2d 106, 115 (1978). And, Filer concedes that, "[f]or the purposes of this appeal, it is undisputed that the Gaming Enterprise and its employees have not waived their tribal sovereign immunity, if such immunity exists."

¶21 At oral argument in this court, Filer emphasized that he does not argue his action in state court is permissible based on any theory of waiver of sovereign immunity. Rather, relying on *Rice*, he argues state court jurisdiction exists because sovereign immunity simply is inapplicable when any matter involving alcohol regulation on Indian land is at issue. As Filer correctly points out, the Court in *Rice* stated that "tradition simply has not recognized a sovereign immunity or inherent authority in favor of liquor regulation by Indians." 463 U.S. at 722, 103 S. Ct. at 3297, 77 L. Ed. 2d at 972. The Court noted that, in enacting § 1161, "Congress was well aware that the Indians never enjoyed a tradition of tribal self-government insofar as liquor transactions were concerned." *Id*. at 733, 103 S. Ct. at 3303, 77 L. Ed. 2d at 979. And, the Court stated, "[b]ecause we find that there is no tradition of sovereign immunity that favors the Indians in this respect, and because we must consider that the activity in which Rehner seeks to engage potentially has a substantial impact beyond the reservation, we may accord little if any weight to any asserted interest in tribal sovereignty in this case." *Id*. at 725, 103 S. Ct. at 3299, 77 L. Ed. 2d at 973-74.

14

¶22      That broad language, however, must be viewed in context. *Rice* involved an action for declaratory relief by a trader and store owner, who sought an exemption from California liquor-license requirements. *Id*. at 715-16, 103 S. Ct. at 3294, 77 L. Ed. 2d at 967. The Court undertook a federal preemption analysis with "the tradition of Indian sovereignty as a 'backdrop.'" *Id*. at 719, 103 S. Ct. at 3295, 77 L. Ed. 2d at 969, *quoting McClanahan v. Ariz. State Tax Comm'n*, 411 U.S. 164, 172, 93 S. Ct. 1257, 1262, 36 L. Ed. 2d 129, 136 (1973). The tribe was not a party to the case, and its sovereign immunity was not at issue. Moreover, California was not asserting state court jurisdiction over the tribe but, rather, merely sought regulatory authority over the issuance and administration of liquor licenses. And the Court merely held that California could require a federally licensed Indian trader, who operated a store on the reservation, to obtain a state liquor license in order to sell alcohol for off-premises consumption. *Id*. at 715-16, 733-34, 103 S. Ct. at 3293-94, 3303-04, 77 L. Ed. 2d at 967-68, 978-79.

¶23      The Court in *Rice* certainly did not hold that California, let alone a private citizen, could sue the tribe in state court, despite a claim of sovereign immunity, if the action had some connection to the state's regulation of alcohol. That issue simply was not raised, addressed, or decided in that case. In short, contrary to Filer's assertion at oral argument, the Court did not hold or even imply that "all bets are off" when it comes to alcohol-related actions. We therefore conclude the trial court correctly ruled that Arizona courts lack

15

jurisdiction to entertain or adjudicate a private statutory dram shop action against the Gaming Enterprise.

¶24 This conclusion, we hasten to add, may be unsatisfactory to some and arguably is divorced from the realities of the modern world, in which on-reservation Indian gaming and alcohol sales have become commonplace. As the Court observed in *Rice*, "distribution of liquor has a significant impact beyond the limits of [a] [r]eservation," "[t]he State has an unquestionable interest in the liquor traffic that occurs within its borders," and "'[a] State's regulatory interest will be particularly substantial if the State can point to off-reservation effects that necessitate State intervention.'" 463 U.S. at 724, 103 S. Ct. at 3298, 77 L. Ed. 2d at 973, *quoting New Mexico v. Mescalero Apache Tribe*, 462 U.S. 324, 336, 103 S. Ct. 2378, 2388, 76 L. Ed. 2d 611, 622 (1983). In addition, although it upheld a claim of sovereign immunity in the *Kiowa Tribe* case, the Supreme Court there aptly remarked:

> There are reasons to doubt the wisdom of perpetuating the [tribal immunity] doctrine. At one time, the doctrine of tribal immunity from suit might have been thought necessary to protect nascent tribal governments from encroachments by States. In our interdependent and mobile society, however, tribal immunity extends beyond what is needed to safeguard tribal self-governance. That is evident when tribes take part in the Nation's commerce. Tribal enterprises now include ski resorts, gambling, and sales of cigarettes to non-Indians. . . . In this economic context, immunity can harm those who are unaware that they are dealing with a tribe, who do not know of tribal immunity, or who have no choice in the matter, as in the case of tort victims.

523 U.S. at 758, 118 S. Ct. at 1704, 140 L. Ed. 2d at 987 (citations omitted).

16

¶25 As the Court in *Kiowa Tribe* further stated, "[t]hese considerations might suggest a need to abrogate tribal immunity, at least as an overarching rule." *Id*. at 758, 118 S. Ct. at 1705, 140 L. Ed. 2d at 987. But, noting that "Congress is in a position to weigh and accommodate the competing policy concerns and reliance interests" in determining whether to limit or alter the scope of tribal immunity, the Court "decline[d] to revisit [its] case law and [chose] to defer to Congress." *Id*. at 759-60, 118 S. Ct. at 1705, 140 L. Ed. 2d at 988. This court, of course, has no greater or different authority.

## II. Employees' Immunity

¶26 Filer contends that, "[e]ven if tribal sovereign immunity does exist for the Gaming Enterprise, it does not apply to individual employees." Relying on *Westfall v. Erwin*, 484 U.S. 292, 108 S. Ct. 580, 98 L. Ed. 2d 619 (1988), he argues sovereign immunity does not extend to the tribal employees unless they not only acted within the scope of their duties but also engaged in discretionary conduct. And, he maintains the actions of the casino employees who over-served alcohol to Levitski "do not rise to the level of discretionary conduct to which tribal sovereign immunity should attach."

¶27 As the Gaming Enterprise points out, however, the Ninth Circuit has not applied the *Westfall* rule to tribal immunity. *See Linneen v. Gila River Indian Cmty*., 276 F.3d 489, 492 (9th Cir. 2002), *cert. denied*, 536 U.S. 939, 122 S. Ct. 2620, 153 L. Ed. 2d 804 (2002); *Imperial Granite Co. v. Pala Band of Mission Indians*, 940 F.2d 1269, 1271 (9th Cir. 1991); *Snow v. Quinault Indian Nation*, 709 F.2d 1319, 1321 (9th Cir. 1983),

17

*cert. denied*, 467 U.S. 1214, 104 S. Ct. 2655, 81 L. Ed. 2d 362 (1984). Rather, that court has recognized and applied sovereign immunity to tribal employees as long as their alleged misconduct occurred while they were acting in their official capacity and within the scope of their authority. *Linneen*, 276 F.3d at 492; *Snow*, 709 F.2d at 1321.

¶28 Filer cites several out-of-state and lower federal-court cases for the contrary conclusion,[9] but they represent a distinct minority view. *See Linneen*, 276 F.3d 489; *Imperial Granite*, 940 F.2d 1269; *Snow*, 709 F.2d 1319; *Frazier v. Turning Stone Casino*, 254 F. Supp. 2d 295, 307 (N.D.N.Y. 2003); *Bassett v. Mashantucket Pequot Museum & Research Ctr. Inc.*, 221 F. Supp. 2d 271, 278 (D. Conn. 2002); *Romanella v. Hayward*, 933 F. Supp. 163, 167 (D. Conn. 1996), *aff'd*, 114 F.3d 15 (2d Cir. 1997). Because the Ninth Circuit's cases on this point are consistent and well reasoned, we will follow them. *Cf. Weatherford v. State*, 206 Ariz. 529, ¶¶ 8-9, 81 P.3d 320, 323-24 (2003) (state courts should follow federal circuit court on federal questions where reasonably possible).

¶29 Accordingly, we need only determine whether the individual defendants were "'acting in their official capacity and within the scope of their authority'" as tribal employees when they served alcohol to Levitski. *See Linneen*, 276 F.3d at 492, *quoting United States v. Oregon*, 657 F.2d 1009, 1013 n.8 (9th Cir. 1981). There is no indication they were not,

---

[9]*Baugus v. Brunson*, 890 F. Supp. 908 (E.D. Cal. 1995); *Turner v. Martire*, 99 Cal. Rptr. 2d 587 (Cal. Ct. App. 2000); *Otterson v. House*, 544 N.W.2d 64 (Minn. Ct. App. 1996).

and Filer does not so argue. Therefore, the immunity doctrine protects the individual tribal-employee defendants in this case.[10]  *See Linneen*, 276 F.3d at 492.

## DISPOSITION

¶30　　　The trial court's order of dismissal is affirmed.


_____
JOHN PELANDER, Chief Judge

CONCURRING:


_____
JOSEPH W. HOWARD, Presiding Judge


_____
PHILIP G. ESPINOSA, Judge

---

[10]In a footnote in his reply brief, Filer argues that defendant Eugene Rose, in whose name the Gaming Enterprise's liquor license is held, "can arguably be held liable under Ariz. Rev. Stat. § 4-311 for the overservice of Mr. Levitski which resulted in the injuries and damages sustained by Mr. Filer." Additionally, he does not cite any authority for that proposition and, therefore, the argument is waived. *See* Ariz. R. Civ. App. P. 13(a)(6), 17B A.R.S.; *see also Ness v. W. Sec. Life Ins. Co.*, 174 Ariz. 497, 502, 851 P.2d 122, 127 (App. 1992) (issues raised for first time in reply brief are waived).