169 P.3d 53 (2007)
Holly M. FOXWORTHY, an individual, Appellant,
v.
PUYALLUP TRIBE OF INDIANS ASSOCIATION, d/b/a Emerald Queen Casino, also known as the Puyallup Indian Tribe, d/b/a Emerald Queen Casino, and William Robert Dewalt and Alisa Dewalt, and the marital community comprised thereof, Jane Does and/or John Does 1-10, Respondents.
No. 36132-9-II.
Court of Appeals of Washington, Division 2.
October 16, 2007.
As Amended October 30, 2007.
Richard Hugh Benedetti, Carol J. Cooper, Davies Pearson PC, Tacoma, WA, for Appellant.
Roy Andrew Umlauf, Ann Crary McCormick, Forsberg & Umlauf, Seattle, WA, for Respondents.
Kyme Allison-Marie Mc Gaw, Morisset Schlosser Jozwiak & McGaw, Trent Stewart-Willia Crable, Attorney at Law, Seattle, WA, Amicus Curiae on behalf of Puyallup Tribe of Indians Associations Emerald Queen.
*54 HUNT, J.
¶ 1 Holly Foxworthy appeals the trial court's dismissal of her negligence action against the Puyallup Tribe of Indians Association for lack of subject matter jurisdiction. Foxworthy was traveling in her automobile off the Puyallup reservation when an intoxicated driver collided with her. Foxworthy sued the intoxicated driver and the Puyallup Tribe, doing business as the Emerald Queen Casino, for serving the driver an excessive amount of alcohol in violation of Washington's Dram Shop Act, RCW 66.44.200. Ruling that the sovereign Tribe was immune from Foxworthy's lawsuit, the trial court granted the Tribe's CR 12(b)(1) motion to dismiss.
¶ 2 On appeal, Foxworthy argues that the trial court erred in recognizing tribal sovereign immunity as an affirmative defense defeating subject matter jurisdiction over her lawsuit. Though acknowledging that there has been no explicit waiver of tribal sovereign immunity from private actions under state dram shop laws, Foxworthy argues that Congress implicitly waived tribal sovereign immunity from such private actions when it promulgated 18 U.S.C. § 1161.
¶ 3 Finding no waiver or abrogation of the Tribe's sovereign immunity from private tort actions in Washington's state courts based on Dram Shop Act violations, we affirm.

FACTS
¶ 4 The Puyallup Tribe owns and operates the Emerald Queen Casino on its tribal land. Since 1996, the Casino has possessed a Washington State Liquor License to sell alcohol.

I. Intoxicated Vehicular Assault
¶ 5 On March 16, 2003, William Dewalt drove to the Emerald Queen Casino to attend a birthday party, where he consumed an unknown quantity of alcohol. Around 1:30 the next morning, Dewalt drove his car off tribal lands, southbound in the northbound lanes on Interstate 705, apparently without headlights. His car rounded a curve to the left and struck Holly Foxworthy's car. Foxworthy and her companion were injured.
¶ 6 At about 4:10 am, Dewalt's blood alcohol level was .16g/100ml, twice the legal limit in Washington. The State charged Dewalt with vehicular assault. He was convicted of this crime.

II. Civil Lawsuit
¶ 7 Foxworthy sued Dewalt and the Puyallup Tribe in Pierce County Superior Court, alleging that the Tribe's Casino had violated Washington's Dram Shop Act by serving alcohol to Dewalt when he was already intoxicated. The Tribe filed a CR 12(b)(1) motion to dismiss, asserting lack of subject matter jurisdiction because the Tribe possessed sovereign immunity from Foxworthy's private lawsuit in state court. The trial court granted the Tribe's motion.[1]
¶ 8 Foxworthy petitioned our Supreme Court for direct review under RAP 4.2(4), arguing that the case involved a fundamental and urgent issue of broad public import requiring prompt and ultimate determination. The Court denied her petition and transferred her appeal to us. With our permission, the Squaxin Indian Tribe filed an amicus curiae brief.

ANALYSIS
¶ 9 In 1953, the United States Congress enacted 18 U.S.C. § 1161, which (1) removed a 120-year federal prohibition on Native Americans' sale and use of alcohol, and (2) authorized states to govern tribal liquor transactions and to regulate liquor on tribal lands. Foxworthy argues that 18 U.S.C. § 1161 thus operates as Congress's implicit waiver of tribal sovereign immunity from private lawsuits arising from a tribe's sale of *55 alcohol to an intoxicated person in violation of a state dram shop act.
¶ 10 No Washington court has decided whether sovereign immunity insulates tribes from private dram-shop-act-based tort litigation. Thus, we address an issue of first impression.

I. Standard of Review
¶ 11 The existence of subject matter jurisdiction over a party asserting sovereign tribal immunity is a question of law, which we review de novo. See Wright v. Colville Tribal Enter. Corp., 159 Wash.2d 108, 111, 147 P.3d 1275 (2006). We agree with the trial court that it lacked subject matter jurisdiction over Foxworthy's action against the Puyallup Tribe.

II. Sovereign Immunity

A. Background
¶ 12 As "domestic dependent nations," American Indian tribes "exercise inherent sovereign authority over their members and territories." Okla. Tax Comm. v. Citizen Band Potawatomi Indian Tribe of Okla., 498 U.S. 505, 509, 111 S.Ct. 905, 112 L.Ed.2d 1112 (1991). This inherent sovereignty includes immunity from suit "absent a clear waiver by the tribe or congressional abrogation." Id.; see also Wright, 159 Wash.2d at 112, 147 P.3d 1275 (citing Santa Clara Pueblo v. Martinez, 436 U.S. 49, 59, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978)).
¶ 13 Upon initial contact between indigenous Indian tribes and foreign colonists, even before the formation of the United States, governments recognized tribal sovereignty. See Worcester v. Georgia, 6 Pet. 515, 31 U.S. 515, 558-59, 8 L.Ed. 483 (1832). Indian tribes retained their inherent sovereign immunity when the United States formed. Since its formation, the United States government has acknowledged Indian tribes. Cherokee Nation v. Georgia, 5 Pet. 1, 30 U.S. 1, 8 L.Ed. 25 (1831). Distinguishing Indian tribes from foreign states, the Supreme Court more than a century ago described Indian tribes as "domestic dependent nations," engaging in government-to-government relationships with the United States. Cherokee Nation, 30 U.S. at 10.
¶ 14 Federal common law created the doctrine of tribal sovereign immunity. In United States v. United States Fid. and Guar. Co., 309 U.S. 506, 60 S.Ct. 653, 84 L.Ed. 894 (1940), the Supreme Court held that, inherent in their retained sovereignty, Indian tribes enjoy an affirmative defense of sovereign immunity. 309 U.S. at 512-13, 60 S.Ct. 653. A tribe's sovereign immunity extends to tribal commercial and governmental activities both on and off the tribe's reservation, and it provides a defense to suits filed against them in state and federal courts. Kiowa Tribe of Okla. v. Mfg. Techs., 523 U.S. 751, 754-55, 760, 118 S.Ct. 1700, 140 L.Ed.2d 981 (1998).
¶ 15 Courts have long recognized that "tribal immunity is a matter of federal law and is not subject to diminution by the States." Kiowa Tribe, 523 U.S. at 756, 118 S.Ct. 1700.[2] Both state and federal and courts have deferred to Congress's plenary authority in this arena. See e.g., Duro v. Reina, 495 U.S. 676, 698, 110 S.Ct. 2053, 109 L.Ed.2d 693 (1990), superseded by statute as stated in United States v. Lara 541 U.S. 193, 196, 124 S.Ct. 1628, 158 L.Ed.2d 420 (2004). Accordingly, Congress maintains the ultimate authority to decide whether, how, and where American Indian tribes may be sued, including the circumstances in which tribes may assert the affirmative defense of sovereign immunity. Modern Congresses have generally continued to promote sovereign immunity for Indian tribes and tribal officials. See Timothy W. Joranko, Tribal Self-Determination Unfettered: Toward a Rule of Absolute Tribal Official Immunity from Damages in Federal Court, 26 Ariz. St. L.J. 987, 1023 (1994).

B. No Express Waiver or Abrogation
¶ 16 Waiver of tribal sovereign immunity can arise in only two ways: from a *56 tribe's express waiver or through a Congressional statute expressly abrogating tribal immunity. See Santa Clara Pueblo, 436 U.S. at 58, 98 S.Ct. 1670.

1. No express tribal waiver
¶ 17 Because Congress has been reluctant to revoke tribal sovereignty, as a practical matter the tribes themselves generally determine whether they will waive their sovereign immunity. See Indian Civil Rights Act, 25 U.S.C. §§ 1321-1322 (requiring tribal consent before a state can assume criminal or civil jurisdiction over actions involving an Indian tribe or its members). The Puyallup Tribe, for example, has expressly waived its tribal sovereign immunity for private tort actions brought in tribal court seeking damages for injuries caused by the Tribe's acts or omissions.[3] According to Foxworthy's representations at oral argument, she has not availed herself of this tribal forum.
¶ 18 Instead, Foxworthy seeks damages in state court, where she concedes that the Tribe has not expressly waived its sovereign immunity. Therefore, if Foxworthy is to sustain her cause of action in state court, she must establish waiver of tribal sovereign immunity by Congressional abrogation. In this, she has failed.

2. No express Congressional abrogation
¶ 19 Congress has rarely, if ever, enacted a statute abrogating tribal sovereign immunity.[4] And Foxworthy concedes that Congress has not explicitly abrogated tribal immunity in the context of such private dram-shop-tort actions. Thus, if Foxworthy is to sustain her cause of action, she must establish that Congress has impliedly abrogated tribal sovereign immunity.

3. No implied Congressional abrogation
¶ 20 The relationship between Congress and Indian tribes is central to our determination of whether there has been an implied Congressional abrogation of tribal sovereign immunity for private dram-shop actions in state courts. Citing Rice v. Rehner, Foxworthy contends that when Congress enacted 18 U.S.C. § 1161, it implicitly waived tribal sovereign immunity from private tort actions based on state dram shop laws. 463 U.S. 713, 103 S.Ct. 3291, 77 L.Ed.2d 961 (1983). The law does not support Foxworthy's position.

a. Rehner distinguished
¶ 21 In Rehner, a federally-licensed Indian trader argued that California's licensing requirement unlawfully infringed on tribal sovereignty. The United States Supreme Court held that the State of California could require him to obtain a state liquor license for a store he operated on an Indian reservation because his store sold alcohol that could be consumed off the reservation. 463 U.S. at 715, 103 S.Ct. 3291. The Rehner Court initially found no tradition of tribal sovereignty in the context of alcohol licensing and distributing because historically[5] the federal government had always exercised authority over Indian alcohol consumption. Rehner, 463 U.S. at 721, 103 S.Ct. 3291.
¶ 22 The Court next noted that 18 U.S.C. § 1161 contains no express Congressional waiver of tribal sovereign immunity; nonetheless, legislative history shows that Congress intended state law to govern tribal liquor transactions. Rehner, 463 U.S. at 726, 103 S.Ct. 3291. Finally, the Court held that "because of the lack of tradition of self-government in the area of liquor regulation, it is not necessary that Congress indicate *57 expressly provided [sic] that the State has jurisdiction to regulate the licensing and distribution of alcohol" in order to defeat tribal sovereign immunity in the area of alcohol regulation. Rehner, 463 U.S. at 731, 103 S.Ct. 3291 (emphasis added).
¶ 23 Both parties appear to agree that RCW 66.44.200, Washington's Dram Shop Act, constitutes permissible state regulation of alcohol as contemplated under 18 U.S.C. § 1161. Thus, the issue is whether § 1161 allows a private state-court lawsuit against the Tribe based on a Dram Shop Act violation. We hold that it does not.
¶ 24 Extrapolating from Rehner, Foxworthy argues that if Congress need not expressly waive tribal sovereign immunity from state regulation of alcohol licensing and distribution, then we can infer that Congress intended to waive tribal sovereign immunity from private tort actions based on state dram shop act violations. But unlike the circumstances in Rehner, Foxworthy provides no parallel legislative history supporting such an inference. Central to Rehner's holding was the long-standing lack of tribal control over alcohol, which had always been subject to regulation by some non-tribal governmental entity  initially the federal government and later the states. There is, however, no analogous legislative history supporting the type of private cause of action that Foxworthy advocates.
¶ 25 Moreover, Foxworthy disregards Rehner's narrow holding, which by its own language limits waiver of tribal sovereignty to the states' regulation of alcohol licensing and distribution. Rehner does not expand such waiver to private lawsuits. We conclude, therefore, that the narrow waiver of tribal sovereign immunity in Rehner does not apply here to establish waiver of tribal sovereign immunity from private tort lawsuits in state court based on Dram Shop Act violations.[6]

C. Tribal Sovereign Immunity Bars States' Lawsuit to Collect Sales Taxes
¶ 26 Foxworthy also disregards the long history of tribal sovereign immunity from lawsuits seeking monetary damages. In Potawatomi, for example, the United States Supreme Court reiterated that, although states are free to collect taxes on tribal sales of cigarette to nonmembers on Indian reservations, tribes do not waive their sovereign immunity to a lawsuit by those states to *58 collect outstanding taxes. 498 U.S. at 514, 111 S.Ct. 905.
¶ 27 We recently rejected similar arguments that the Puyallup Tribe had waived sovereign immunity "by ceding control to the State to regulate on-reservation tribal [cigarette-sale] retailers." Matheson v. Gregoire, 139 Wash.App. 624, 630, 161 P.3d 486 (2007). Relying on our Washington Supreme Court's decision in Wright, which in turn cited the United States Supreme Court opinion in Kiowa Tribe, we held that the Puyallup Tribe's voluntary cooperation with the State of Washington in collecting taxes on cigarette sales on the reservation does not waive the Tribe's sovereign immunity to lawsuit by the State to collect those taxes. Matheson, 139 Wash.App. at 633, 161 P.3d 486.
¶ 28 The Ninth Circuit Court of Appeals issued an analogous holding with respect to taxes on liquor sales on Indian reservations. Clearly 18 U.S.C. § 1161 allows the states to require tribes to charge a state tax on liquor sales. Nevertheless, in Squaxin Island Tribe v. Washington, 781 F.2d 715, 723 (9th Cir.1986), the Ninth Circuit held that tribal sovereign immunity prevents the State of Washington from suing a tribe to recover past liquor sales taxes.
¶ 29 Accordingly, we hold that to the extent that the Puyallup Tribe has waived its sovereign immunity by cooperating with the State of Washington to collect sales taxes on liquor sales on the reservation, the Tribe has not thereby extended such waiver to private state-court tort actions arising from such liquor sales.

C. Ninth Circuit's Fort Belknap Inapplicable
¶ 30 Foxworthy next argues that state dram shop acts[7] are part of the states' broader regulation of alcohol and, therefore, the divestment of sovereign tribal immunity in the criminal context for dram shop act violations impliedly extends to private negligence actions for dram shop act violations. Again, we disagree.
¶ 31 Foxworthy cites Fort Belknap Indian Cmty. of the Fort Belknap Indian Reservation v. Mazurek, 43 F.3d 428, 432 (9th Cir. 1994), a case that also interpreted 18 U.S.C. § 1161. Like the Supreme Court in Rehner, the Ninth Circuit focused on the lack of a history of tribal sovereign immunity from state alcohol regulation and held that 18 U.S.C. § 1161 implicitly granted state courts jurisdiction to prosecute Indians criminally for violating state liquor laws on tribal lands. Fort Belknap Indian Cmty., 43 F.3d at 433-34. In so holding, however, the Ninth Circuit in Fort Belknap did not interpret 18 U.S.C. § 1161 as creating a private cause of action against the Tribe for damages arising from dram shop act violations.
¶ 32 Like Foxworthy's attempt to analogize her case to Rehner, in citing Fort Belknap, she ignores an important difference between the "right to demand compliance with state laws and the means available to enforce them." Kiowa Tribe, 523 U.S. at 755, 118 S.Ct. 1700. Fort Belknap upheld the state's right to enforce its dram shop act by criminally prosecuting those who violate the state's dram shop act. But in so doing, the Ninth Circuit did not similarly include private tort actions as a means for such enforcement. Thus, Foxworthy's case is easily distinguishable from Fort Belknap because Foxworthy's claim is a private, civil, tort action to recover damages in state court,[8] not a criminal prosecution.
¶ 33 As we have noted above, Indian tribes have a long history of sovereign immunity from private tort actions, which Congress has not abrogated. Fort Belknap does not persuade us otherwise.

D. Policy Arguments
¶ 34 Foxworthy lifts a passing comment *59 from Filer[9] and incorporates dicta from Kiowa Tribe[10] to argue that finding tribal sovereign immunity here is inconsistent with public policy. More specifically, she contends that tribal sovereign immunity unfairly conditions her ability to recover damages on the fortuitous circumstance that the intoxicated driver who injured her was served alcohol in an Indian tribal casino instead of in a non-Indian establishment off the reservation. This argument also fails.
¶ 35 Foxworthy notes that some courts have expressed reluctance to recognize tribal sovereign immunity.[11] Nonetheless, in Kiowa Tribe, the highest court in our nation has acknowledged the continued existence of Indian tribes' sovereign immunity in the context of contract breach and remedy, and it has left it to Congress to revisit the legal doctrine of tribal immunity if and when Congress deems it appropriate. The Supreme Court in Kiowa Tribe clearly held that private individuals, such as Foxworthy, cannot sue Indian tribes in state court absent an express waiver of immunity. Thus, although Kiowa Tribe dicta appears to support Foxworthy's policy arguments, Kiowa Tribe's holding does not.
¶ 36 As the United States Supreme Court noted nine years ago,
Congress is in a position to weight and accommodate the competing policy concerns and reliance interests. The capacity of the Legislative Branch to address the issue by comprehensive legislation counsels some caution by us in this area. . . . [Thus, even if policy] considerations might suggest a need to abrogate tribal immunity, . . . we defer to the role Congress may wish to exercise in this important judgment.
Kiowa Tribe, 523 U.S. at 758-59, 118 S.Ct. 1700.
¶ 37 Regardless of whether the current state of dram shop case law tolerates inequities,[12] to date, Congress has not implemented a change or acted to abrogate tribal sovereign immunity in private dram-shop-related tort actions such as Foxworthy's. We hold, therefore, that tribal sovereign immunity remains intact and that the Kiowa Tribe holding supports, rather than undermines, the trial court's dismissal of Foxworthy's complaint.

III. Conclusion
¶ 38 Indian Tribes have long enjoyed inherent sovereign immunity from private tort actions. In 1998, the United States Supreme Court underscored the continuing vitality of tribal sovereign immunity from private actions, until and unless a tribe or Congress chooses to waive or to abrogate it expressly. Kiowa Tribe, 523 U.S. at 759-60, 118 S.Ct. 1700.
¶ 39 The Puyallup Tribe has not waived its sovereign immunity to private lawsuits in state court. Nor has Congress chosen to abrogate tribal immunity in private dram shop actions, such as Foxworthy's. And we, the courts, lack the authority to do as Foxworthy requests. See id, at 760, 118 S.Ct. 1700; Filer, 129 P.3d at 85.
¶ 40 Accordingly, we hold as a matter of law that lack of subject matter jurisdiction *60 required the trial court to dismiss Foxworthy's action against the Puyallup Tribe.
¶ 41 Affirmed.
We concur: ARMSTRONG, P.J., and QUINN-BRINTNALL, J.
NOTES
[1] The trial court reasoned that (1) the United States Congress has the ultimate authority to waive tribal sovereign immunity from private dram shop liability lawsuits; (2) it was not clear that Congress had waived tribal immunity for purposes of private tort actions based on Dram Shop Act violations; and (3) Foxworthy's strong public policy considerations, questioning the wisdom of tribal immunity in this context, neither defeated tribal sovereign immunity nor allowed the trial court to infer a waiver of immunity.
[2] See also State of Montana v. Gilham, 133 F.3d 1133, 1136 (9th Cir.1998), citing Three Affiliated Tribes of Fort Berthold Reservation v. Wold Eng'g, 476 U.S. 877, 891, 106 S.Ct. 2305, 90 L.Ed.2d 881 (1986).
[3] The Puyallup Tribal Tort Claims Ordinance provides that a "written notice of claim for monetary damages . . . shall have been given no later than 180 days after the act or omission occurred giving rise to the injury." Puyallup Tribal Tort Claims Ordinance, Tribal Code § 255.6(d)(3). Clerk's Papers (CP) at 266.
[4] In Santa Clara Pueblo, for example, the Supreme Court reaffirmed the affirmative defense of tribal sovereign immunity under federal law and held that Congress did not waive the tribes' sovereign immunity from suit when it enacted the ICRA. 436 U.S. at 59, 98 S.Ct. 1670.
[5] Historically, the colonists exercised control over Indian alcohol consumption. After formation of the United States, the federal government exercised control, at least until 1953, when Congress enacted 18 U.S.C. § 1161, authorizing the states to regulate liquor transaction on tribal land.
[6] We note that Arizona and Texas intermediate appellate courts have also held Congress did not abrogate tribal immunity from private, state-court, dram-shop litigation when it required tribal compliance with state liquor-sale laws.

In Filer v. Tohono O'Odham Nation Gaming Enter., 212 Ariz. 167, 129 P.3d 78 (Ct.App.2006), Filer sued a tribal casino that had served excessive amounts of alcohol to a motorist who then caused an accident that injured Filer and killed his wife. Filer, 129 P.3d at 80. In affirming the trial court's dismissal of the Filers' negligence action against the tribe that owned and ran the casino, the Arizona appellate court (1) specifically noted that 18 U.S.C. § 1161 does not even reference tribal sovereign immunity, much less provide waiver of such immunity for dram-shop-related litigation, 129 P.3d at 83; and (2) rejected Filer's reliance on Rehner, reasoning that the circumstances were distinguishable because Rehner demanded tribal compliance with state law but it did not address a private right of action to enforce a state law against a tribe. Filer, 129 P.3d at 82; see also Potawatomi, 498 U.S. at 514, 111 S.Ct. 905 (distinguishing state tax regulation and recovering unpaid taxes through a lawsuit).
Similarly, in Holguin v. Ysleta Del Sur Pueblo, 954 S.W.2d 843 (Tex.App.1997), victim Holguin's family brought a private dram shop action against a tribe that had served alcohol to an intoxicated driver who left the tribal casino and later collided with and killed Hoguin. The trial court granted the Tribe's summary judgment motion based on the tribe's sovereign immunity. Holguin, 954 S.W.2d at 845. The Texas appellate court (1) acknowledged that, under Rehner, the tribe was subject to state alcohol licensing and permitting requirements and to provisions of the Texas dram shop act, which allow the State to revoke liquor licenses for dram shop violations, Holguin, 954 S.W.2d at 849-51; (2) noted the difference between state regulation of alcohol and a state's ability to collect monetary damages and that waiver of sovereign immunity for the former did not indicate a waiver of sovereign immunity for the latter. Holguin, 954 S.W.2d at 854; and (3) held that that 18 U.S.C. § 1861 neither created a private action under the Texas dram shop act nor waived tribal sovereign immunity for a private lawsuit based on the Texas dram shop act. Holguin, 954 S.W.2d at 854; (citing Squaxin Island Tribe, 781 F.2d 715 (9th Cir.1986); State of Okla. ex. rel. Okla. Tax Comm. v. Graham, 822 F.2d 951 (10th Cir.1987); Chemehuevi Indian Tribe v. Cal. State Bd. of Equalization, 757 F.2d 1047 (9th Cir.), rev'd on other grounds, 474 U.S. 9, 106 S.Ct. 289, 88 L.Ed.2d 9 (1985)).
[7] Washington's Dram Shop Act provides: "No person shall sell any liquor to any person apparently under the influence of liquor." RCW 66.44.200(1).
[8] See also a somewhat mirror-image case, Gilham, 133 F.3d at 1136, in which the Ninth Circuit held that Gilham could not sue the State of Montana in tribal court because the state's waiver of sovereign immunity applied only to the state court forum, not to tribal court.
[9] Acknowledging that its decision "may be unsatisfactory to some and is arguably divorced from the realities of the modern world," the Filer court nevertheless held that it is the U.S. Congress that is in the position to limit tribal sovereign immunity, not state courts. 129 P.3d at 84-85.
[10] In Kiowa Tribe, an Indian tribe engaged in a contract and signed a promissory note outside tribal lands. The tribe defaulted on the note, and its contractual partner sued the tribe in state court. 523 U.S. at 753-54, 118 S.Ct. 1700. Before deciding whether sovereign immunity applied, the United States Court noted in dicta that early federal cases made an "assumption of immunity for the sake of argument, not a reasoned statement of doctrine." Kiowa Tribe, 523 U.S. at 757, 118 S.Ct. 1700.
[11] See also "Tribal Sovereign Immunity," Washington State Bar News, August 2007, page 21.
[12] Again, as the Supreme Court clearly stated in Kiowa, it is for Congress, not the states, to rectify not only (1) any general inequity arising from a plaintiff's inability to recover due to a would-be defendant tribe's sovereign immunity, but also (2) any specific inequity arising from a plaintiff's inability to recover damages from a tribe, even though such action would lie against a non-tribal party under similar circumstances. Kiowa, 523 U.S. at 759-60, 118 S.Ct. 1700.