NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

JAMES LAWRENCE BROWN, *Plaintiff/Appellant,*

*v.*

OFFICER K. ROBERTSON #Y234, YAVAPAI-APACHE NATION POLICE
DEPARTMENT, *Defendants/Appellees.*

No. 1 CA-CV 14-0812
FILED 1-19-2016

Appeal from the Superior Court in Yavapai County
No.  V1300CV201480363
The Honorable Jeffrey G. Paupore, Judge Pro Tem

**AFFIRMED**

COUNSEL

James Lawrence Brown, Camp Verde
*Plaintiff/Appellant*

Office of the Attorney General Yavapai-Apache Nation, Camp Verde
By Lisa Bluelake
*Counsel for Defendants/Appellees*

**MEMORANDUM DECISION**

Judge John C. Gemmill delivered the decision of the Court, in which
Presiding Judge Andrew W. Gould and Judge Margaret H. Downie joined.

**G E M M I L L**, Judge:

**¶1**　　　　James Lawrence Brown ("Brown") filed an action in Yavapai County Superior Court seeking damages for various alleged injuries against the Yavapai-Apache Nation Police Department and Police Officer K.R. (collectively "YANPD"). Brown argues the superior court erred in dismissing his complaint on the basis of YANPD's sovereign immunity. For the following reasons, we affirm the superior court's dismissal.

**BACKGROUND**

**¶2**　　　　In March 2014, Officer K.R. observed a taillight violation on Brown's truck as Brown was leaving a casino located on the Yavapai-Apache Reservation. She initiated a traffic stop a few miles down the road, off the reservation. During the course of the stop, Officer K.R. discovered that Brown was driving on a suspended driver's license. Brown was arrested and his vehicle impounded.

**¶3**　　　　In June 2014, Brown was found guilty in Camp Verde Municipal Court on one count of driving on a suspended license in violation of A.R.S. § 28-3473(A). After the judgment was entered, Brown began sending letters to YANPD, claiming it violated his constitutional right to use of his truck, demanding an administrative hearing, and requesting $60,000 in damages. According to the YANPD, Brown met with a YANPD detective who told him how to file an official request for hearing, but Brown did not do so. Instead, he wrote letters over the course of several months, demanding damages and an administrative hearing from YANPD. Brown eventually regained possession of his truck in September 2014, and shortly thereafter he filed a civil action against YANPD in superior court, alleging violation of due process, theft, kidnapping, and unlawful arrest.

**¶4**　　　　In October 2014, YANPD filed a motion to dismiss Brown's complaint, arguing that the Yavapai-Apache Nation's sovereign immunity barred Brown from bringing suit against YANPD. The court granted YANPD's motion and dismissed the complaint with prejudice. Brown timely appeals, arguing that (1) an Indian tribe's sovereign immunity does not extend to off-reservation conduct and (2) the tribe waived sovereign immunity when it became subject to the terms of A.R.S. § 13-3874. This court has jurisdiction under Arizona Revised Statutes ("A.R.S.") sections 12-120.21(A)(1) and -120.21(B).

## DISCUSSION

**¶5** "Indian tribes have long been recognized as possessing the common-law immunity from suit traditionally enjoyed by sovereign powers." *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978); *see also Morgan v. Colorado River Indian Tribe*, 103 Ariz. 425, 428 (1968) (recognizing tribal sovereign immunity in Arizona). Tribal sovereign immunity extends to tribal employees acting within the scope of their official capacity. *See Cook v. AVI Casino Enter., Inc.*, 548 F.3d 718, 727 (9th Cir. 2008); *United States v. Oregon*, 657 F.2d 1009, 1012 n.8 (9th Cir. 1981). We review de novo whether sovereign immunity applies to prevent Arizona from exercising jurisdiction over Brown's claims. *See Filer v. Tohono O'Odham Nation Gaming Enter.*, 212 Ariz. 167, 169, ¶ 5 (App. 2006).

## I. Sovereign Immunity Applies to Off-Reservation Conduct

**¶6** First, Brown argues that because the traffic stop did not take place within the Yavapai-Apache Nation, the doctrine of sovereign immunity does not apply. Brown also claims the traffic stop had no meaningful connection to the tribe's land or function, therefore obviating the protection of tribal immunity and giving Arizona state courts jurisdiction to hear his civil complaint for damages. We disagree.

**¶7** Both federal and Arizona case law hold that sovereign immunity is not limited to activities occurring within reservation borders. *See Michigan v. Bay Mills Indian Cmty.*, 134 S. Ct. 2024, 2034, 2039 (2014) (holding the state of Michigan lacked the authority to sue an Indian tribe for illegal gaming activity occurring off of the reservation); *Kiowa v. Mfg. Tech., Inc.*, 523 U.S. 751, 755 (1998) (refusing to restrict the application of sovereign immunity to "transactions on reservations and to governmental activities"); *Morgan*, 103 Ariz. at 427 (determining that sovereign immunity barred a suit against an Indian tribe for a tort that occurred "while [the tribe was] engaged in a business enterprise within [Arizona] and outside of the exterior boundaries of [the tribe's] reservation"). Nor do these cases make a distinction between governmental and non-governmental tribal activities when extending the protection of sovereign immunity. *See Kiowa*, 523 U.S. at 755; *Morgan*, 103 Ariz. at 427. Accordingly, we hold that a tribe's sovereign immunity may extend to a tribal officer's off-reservation traffic stops and arrests.

## II.    YANPD Has Not Waived Sovereign Immunity

¶8          Nonetheless, an Indian tribe may still be subject to suit if Congress has authorized such a suit or if the tribe has clearly and expressly waived its immunity. *Okla. Tax Comm'n v. Citizen Band Potawatomi Indian Tribe*, 498 U.S. 505, 509 (1991); *Filer*, 212 Ariz. at 173, ¶ 20. Brown argues YANPD waived its sovereign immunity when it acted under the authority of A.R.S. § 13-3874. Because we disagree that the tribe's conduct in compliance with § 13-3874 creates a clear and express waiver of sovereign immunity, we affirm the trial court's dismissal.

¶9          Section 13-3874 governs an Indian police officer's ability to act outside the geographical boundaries of his or her agency:

> A.    While engaged in the conduct of his employment any Indian police officer who is appointed by the bureau of Indian affairs or the governing body of an Indian tribe as a law enforcement officer and who meets the qualifications and training standards adopted pursuant to § 41-1822 shall possess and exercise all law enforcement powers of peace officers in this state.
>
> B.    Each agency appointing any Indian police officer pursuant to this section shall be liable for any and all acts of such officer acting within the scope of his employment or authority. Neither the state nor any political subdivision shall be liable for any acts or failure to act by any such Indian police officer.

A.R.S. § 13-3874(A)–(B).[1] Brown asserts that by accepting the "privilege" of having its officers conduct law enforcement tasks off the reservation,

---

[1] At all times relevant to this action, Officer K.R. was certified under the Arizona Peace Officer Standards and Training (AZ-POST) Board to conduct law enforcement operations outside the reservation. *See* A.R.S. § 41-1822 (defining AZ-POST training requirements). Officer K.R. was, therefore, authorized under § 13-3874(A) to perform law enforcement powers of an Arizona peace officer, including the stop that took place in this case.

YANPD has consented to be sued for the acts of its officers, under § 13-3874(B).[2]

¶10  In order to prevail on this argument, Brown must show that either Congress or the Yavapai-Apache Nation clearly expressed an intention to waive tribal immunity. *Potawatomi*, 532 U.S. at 418; *Filer*, 212 Ariz. at 173, ¶ 20 (rejecting an argument that a tribe impliedly waived sovereign immunity). The language of § 13-3874(B) does not support such a conclusion.

¶11  First, the State cannot waive immunity on behalf of the Yavapai-Apache Nation. *See Morgan*, 103 Ariz. at 428 (holding that Indian tribes "cannot be subjected to the jurisdiction of [Arizona] courts without [the tribe's] consent or the consent of Congress"). Abrogation of tribal immunity requires that Congress or the tribe "unequivocally express" the consent to suit. *Potawatomi*, 532 U.S. at 418 (internal quotation omitted). Brown argues that because YANPD submitted to the terms of A.R.S. § 13-3874, it impliedly waived its sovereign immunity. But in *Filer*, this court explained that an implied waiver of immunity is insufficient. *Filer*, 212 Ariz. at 173, ¶ 20. A tribe's consent to suit must be "clear" and "express." *Id.* Accordingly, we will not interpret YANPD's submission to the statute as waiving its sovereign immunity.

¶12  Furthermore, Arizona and federal courts have explained that a tribe's agreement to act in accordance with Arizona law is not an express waiver of immunity from suits arising under that law. *See Filer*, 212 Ariz. at 173, ¶ 20 (holding that applying for and obtaining a liquor license was not a waiver of immunity from suit for actions arising under Arizona liquor laws); *Kiowa*, 523 U.S. at 755 (noting the fact that "substantive state laws apply to off-reservation conduct, however, is not to say that a tribe no longer enjoys immunity from suit" for that conduct); *see also Potawatomi*, 498 U.S. at 510 (holding that a state can tax a tribe's off-reservation sale of goods,

---

[2] Brown also contends that this statute creates a contract between YANPD and the State by which YANPD impliedly agreed to be bound to the conditions of the statute in order to enjoy the privileges arising thereunder. But statutes will not be interpreted, generally, to create contract rights or obligations. *See Proksa v. Ariz. State Schools for the Deaf & Blind*, 205 Ariz. 627, 629, ¶ 11 (2003); *see also Nat'l RR Passenger Corp. v. Atchison, Topeka, & Santa Fe Ry.*, 470 U.S. 451, 465–66 (1985). We therefore disagree with Brown's argument that YANPD contractually accepted liability for police conduct under A.R.S. § 13-3874.

but sovereign immunity prevents the state from suing the tribe to enforce or collect those taxes).  Similarly, YANPD has not waived its sovereign immunity by allowing its officers to act under A.R.S. § 13-3874(A).

## CONCLUSION

**¶13**     Because we agree that YANPD is immune from suit, we affirm the trial court's dismissal of Brown's complaint.



Ruth A. Willingham · Clerk of the Court
FILED: ama