[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 08-10602

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 30, 2009
THOMAS K. KAHN
CLERK

D. C. Docket No. 07-00688-CV-WS

FREEMANVILLE WATER SYSTEM, INC.,

Plaintiff-Appellant,

versus

POARCH BAND OF CREEK INDIANS,
P.C.I. GAMING,
CREEK INDIAN ENTERPRISES,

Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Alabama

_____

(March 30, 2009)

Before TJOFLAT and CARNES, Circuit Judges, and HOOD,[*] District Judge.

_____

[*] Honorable Joseph M. Hood, United States District Judge for the Eastern District of Kentucky, sitting by designation.

CARNES, Circuit Judge:

An Indian tribe would like to develop its own water facilities and distribution system, but a rural water authority already exists to serve parts of the county, including all of the tribe's lands and members. Not wanting to lose any of its customer base, the water authority claims an exclusive right to continue serving those parts of the county. The source of the claimed right is the anti-curtailment provision of the Consolidated Farm and Rural Development Act of 1961, 7 U.S.C. §§ 1921–2009dd-7, which protects water authorities funded with federal loans from encroachment on their territories. The tribe asserts that it has sovereign immunity.

Indian tribes have sovereign immunity from lawsuits unless Congress has abrogated it in the statute creating the right of action that is asserted against the tribe. To be effective the expression of Congressional intent must be a clarion call of clarity. Ambiguity is the enemy of abrogation, and the critical part of the Rural Development Act is ambiguous.

## I.

Freemanville Water System, Inc. is a rural water authority that operates a water system that supplies various parts of Escambia County, Alabama. It funds that service through a federal loan authorized by 7 U.S.C. § 1926(a)(1), which is

2

one paragraph of the Consolidated Farm and Rural Development Act. The Poarch Band of Creek Indians is a federally recognized Indian tribe with non-contiguous tribal reservation and trust lands located in Escambia County. Freemanville currently provides water to the Poarch Band's lands.

Having decided that supplying its own water would be the best way to meet its needs, the Poarch Band began developing its own water facilities in the spring of 2007. To ensure that it has what it terms a "dependable and economic source of water for residential and commercial use on tribal lands," the Poarch Band wants to construct a distribution facility that would deliver water to all of those lands. Because its tribal lands are not all contiguous, some of the water system's infrastructure will be situated on non-tribal land within Freemanville's service area.

Freemanville filed a federal lawsuit in September 2007 asserting that the Poarch Band's "planned construction of a water system on or between tribal lands will curtail or limit Freemanville's service" in violation of § 1926(b).[1] It asked for a declaratory judgment and an injunction barring the Poarch Band from building a

_____

[1] Freemanville sued two other parties, Creek Indian Enterprises and P.C.I. Gaming, both of which are wholly owned by the Poarch Band and are chartered under its tribal laws. Freemanville does not dispute that these entities share whatever immunity the Poarch Band enjoys.

3

water facility within Freemanville's service area during the term of its federal loan. The Poarch Band filed a motion to dismiss asserting that the district court lacked jurisdiction due to tribal sovereign immunity.

The district court granted the motion to dismiss after concluding that the Rural Development Act did not make it clear that Congress had intended to abrogate the Poarch Band's sovereign immunity from claims arising under the Act. Noting the Supreme Court's refusal to draw distinctions between tribal and non-tribal lands for sovereign immunity purposes, the court also concluded that the Poarch Band's immunity extended to all tribal actions regardless of whether those actions occurred solely on the tribe's property.[2]

## II.

Paragraph 1926(a)(1) grants the Secretary of Agriculture authority "to make or insure loans to associations, including corporations not operated for profit, Indian tribes on Federal and State reservations and other federally recognized

---

[2] Before we get to the issues the parties have raised, we note one that they have not: whether the anti-curtailment provision in § 1926(b) creates a private right of action. It could be argued that § 1926(b) simply prohibits the Secretary of Agriculture from making or insuring loans that would be used by a municipal corporation or public body to encroach on a protected service area without giving an injured party the right to sue the encroacher. Not every statutory limitation creates a private right of action for one who is harmed when the limits are transgressed. See Hemispherx Biopharma, Inc. v. Johannesburg Consol. Invs., 553 F.3d 1351, 1361 n.14 (11th Cir. 2008). Because neither the parties nor the district court raised this issue, we will not decide it. Id. Instead, we will proceed on the assumption, not critical to the outcome of this appeal, that § 1926(b) does create a private cause of action.

Indian tribes, and public and quasi-public agencies to provide for . . . the conservation, development, use, and control of water. . . ." 7 U.S.C. § 1926(a)(1); see also id. § 1921. To safeguard the federal government's investment in rural development, the Act also includes a subsection intended to protect a § 1926(a)(1) loanholder's territory or service area so that the water service facility will generate enough funds to pay back the loan. See id. § 1926(b). That subsection, the anti-curtailment provision, states: "The service provided or made available through any such association shall not be curtailed or limited by inclusion of the area served by such association within the boundaries of any municipal corporation or other public body . . . during the term of such loan . . . ." Id.

Assuming that the anti-curtailment provision creates a private right of action for an association to sue an encroacher, see supra n.2, the question is whether a lawsuit asserting that right of action against an Indian tribe is barred by sovereign immunity.

## A.

"'Indian tribes have long been recognized as possessing the common-law immunity from suit traditionally enjoyed by sovereign powers.'" Florida v. Seminole Tribe, 181 F.3d 1237, 1241 (11th Cir. 1999) (quoting Santa Clara Pueblo v. Martinez, 436 U.S. 49, 58, 98 S. Ct. 1670, 1677 (1978)). Thus, "an

5

Indian tribe is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity." Kiowa Tribe v. Mfg. Techs., Inc., 523 U.S. 751, 754, 118 S. Ct. 1700, 1702 (1998). Tribal sovereign immunity, where it applies, bars actions against tribes regardless of the type of relief sought. See, e.g., id. at 760, 118 S. Ct. at 1705 (barring suit for money damages); Fla. Paraplegic Ass'n v. Miccosukee Tribe of Indians, 166 F.3d 1126, 1127 (11th Cir. 1999) (barring suit for injunctive relief).

When Congress intends to abrogate tribal sovereign immunity, it must do so expressly, with clear and unequivocal language. See, e.g., Santa Clara, 436 U.S. at 58–59, 98 S. Ct. at 1677; Seminole Tribe, 181 F.3d at 1241–42. We have held that abrogation requires "the definitive language of the statute itself [to] state[] an intent either to abolish Indian tribes' common law immunity or to subject tribes to suit under the act." Miccosukee Tribe, 166 F.3d at 1131. Where congressional intent is ambiguous as to Indian rights, those ambiguities "must be resolved in the Indians' favor." Seminole Tribe, 181 F.3d at 1242. Although Congress does not have to state its intent to abrogate in a single provision of the Act, whether it is drawn from one or several provisions, that intent must be "unmistakably clear." See Kimel v. Fla. Bd. of Regents, 528 U.S. 62, 73, 120 S. Ct. 631, 640 (2000) (evaluating state sovereign immunity and noting the "simple but stringent test"

6

courts apply to determine whether Congress has abrogated sovereign immunity: "Congress may abrogate the States' constitutionally secured immunity from suit in federal court only by making its intention unmistakably clear in the language of the statute." (internal quotation marks omitted)); Miccosukee Tribe, 166 F.3d at 1131 (noting that the unmistakably clear standard applies to both tribal and state sovereign immunity). The question is whether the Rural Development Act clearly and unequivocally shows that Congress intended to abrogate the sovereign immunity of Indian tribes and to permit a lawsuit against them for violating the Act's anti-curtailment provision.

**B.**

The anti-curtailment provision in the Rural Development Act refers to "any municipal corporation or other public body," 7 U.S.C. § 1926(b), without specifically mentioning Indian tribes, while several other parts of the same Act do mention them. For example, § 1926(a)(13) requires that the "highest priority" for water facility loans be given to applications from "any municipality or other public agency (*including an Indian tribe on a Federal or State reservation or other federally recognized Indian tribal group*)." Id. § 1926(a)(13) (emphasis added). Paragraph 1926(a)(19), which authorizes a grant program for community facilities, states that the grants may be awarded to "associations, units of general local

7

government, nonprofit corporations, *Indian tribes . . . and federally recognized Indian tribes*." Id. § 1926(a)(19)(A) (emphasis added). The next two paragraphs of the Act, § 1926(a)(20) and (21), in describing who is eligible for the grants in certain types of rural areas, list "associations, units of general local government, nonprofit corporations, *and Indian tribes*." Id. § 1926(a)(20)(B), (21)(A) (emphasis added).

Paragraph 1926(a)(25) authorizes grants to "Tribal College[s] or Universit[ies]" so that those institutions can develop "essential community facilities." Id. § 1926(a)(25)(A). Finally, a different provision in the Act allows for grants or loans to "rural water supply corporations, cooperatives, or similar entities, *Indian tribes on Federal and State reservations and other federally recognized Indian tribes*, and public agencies, to provide for the conservation, development, use, and control of water. . . ." Id. § 1926c(a)(1) (emphasis added).

In sum, Indian tribes are explicitly included within the scope of seven provisions of the Rural Development Act, but they are not mentioned in § 1926(b)'s anti-curtailment provision. See 7 U.S.C. § 1926(b); id. § 1926(a)(1), (13), (19)–(21), (25); id. § 1926c(a)(1). "Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the

8

disparate inclusion or exclusion." Duncan v. Walker, 533 U.S. 167, 173, 121 S. Ct. 2120, 2125 (2001) (alteration and internal quotation marks omitted); see also Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 63, 126 S. Ct. 2405, 2412 (2006). This canon of interpretation is akin to the one that "where Congress knows how to say something but chooses not to, its silence is controlling." Delgado v. U.S. Att'y Gen., 487 F.3d 855, 862 (11th Cir. 2007) (alteration and internal quotation marks omitted); see also CBS Inc. v. PrimeTime 24 Joint Venture, 245 F.3d 1217, 1226 (11th Cir. 2001); In re Griffith, 206 F.3d 1389, 1394 (11th Cir. 2000). It is also related to the canon that "when Congress uses different language in similar sections, it intends different meanings." DIRECTV, Inc. v. Brown, 371 F.3d 814, 818 (11th Cir. 2004) (internal quotation marks omitted); see also Tippitt v. Reliance Standard Life Ins. Co., 457 F.3d 1227, 1236 (11th Cir. 2006); Iraola & CIA, S.A. v. Kimberly-Clark Corp., 232 F.3d 854, 859 (11th Cir. 2000). This family of canons weighs in favor of finding that Congress did not intend to abrogate tribal sovereign immunity from anti-curtailment lawsuits or it would have mentioned Indian tribes in that provision, just as it did in seven others. And a finding that the statute expresses Congress' intent not to abrogate is at the other end of the spectrum from the required finding that the statute clearly expresses an intent to abrogate.

9

Freemanville contends that even though Indian tribes are not explicitly mentioned in the anti-curtailment provision, as they are in other parts of the Act, tribes are clearly included within that provision's language describing "other public bod[ies]." See 7 U.S.C. § 1926(b). But the term "municipal corporation or other public body" is not defined in the Act, and the references to Indian tribes in relation to public bodies or agencies throughout the Act are anything but consistent.

In the provision containing the original loan authority, § 1926(a)(1), Congress describes the entities eligible for loans this way: "Indian tribes on Federal and State reservations and other federally recognized Indian tribes, *and* public and quasi-public agencies." 7 U.S.C. § 1926(a)(1) (emphasis added). The implication is that Indian tribes are not public agencies for purposes of the Act; if they were, there would have been no need to mention tribes separately from "public and quasi-public agencies" and join them to that phrase with the conjunctive "and."

There is a conflicting indication, however, a dozen paragraphs later in the Act. Directing the Secretary of Agriculture to give highest priority to certain sparsely populated rural areas when making loans, the list of eligible entities is described this way: "any municipality or other public agency (*including* an Indian

10

tribe on a Federal or State reservation or other federally recognized Indian tribal group)." Id. § 1926(a)(13) (emphasis added). That language at least implies Indian tribes are included within the term "or other public agency," an implication which clashes with the implication of § 1926(a)(1).

After a hard look at the statute the only thing that is unmistakably clear to us is that the statutory language does not make it unmistakably clear that Congress intended to abrogate tribal sovereign immunity from lawsuits claiming a violation of the anti-curtailment provision. See Kimel, 528 U.S. at 73, 120 S. Ct. at 640. If there were no thumbs on the interpretive scale, the question of intent reasonably could be decided either way and that exemplifies ambiguity. See United States v. Acosta, 363 F.3d 1141, 1155 (11th Cir. 2004) ("We have noted before, albeit in a different context, that the existence of two reasonable, competing interpretations is the very definition of ambiguity." (internal quotation marks omitted)); Doe v. Bush, 261 F.3d 1037, 1062 (11th Cir. 2001) ("We need not choose between the competing interpretations . . . . It is enough that there are two reasonable, competing interpretations, which is the very definition of ambiguity."). Because there is ambiguity, the thumb that presses down in favor of tribal sovereign immunity tips the balance. See, e.g., Santa Clara, 436 U.S. at 59, 98 S. Ct. at

11

1677; <u>Seminole Tribe</u>, 181 F.3d at 1241–42. Tribal sovereign immunity has not been abrogated.

## III.

That sovereign immunity has not been abrogated generally in this kind of lawsuit almost ends this appeal, but one contention remains. Freemanville contends that tribal sovereign immunity does not extend to activities or conduct occurring outside tribal lands. This matters because, as we mentioned earlier, some of the tribe's water system will have to run through non-tribal land. The Supreme Court, however, has "sustained tribal immunity from suit without drawing a distinction based on where the tribal activities occurred." <u>Kiowa Tribe</u>, 523 U.S. at 754, 118 S. Ct. at 1703. The Court declined its last opportunity to limit tribal immunity to activities occurring only on tribal lands, preferring instead to "defer to the role Congress may wish to exercise in this important judgment." <u>See</u> <u>id.</u> at 758, 118 S. Ct. at 1705. Being bound to follow the Supreme Court's decision, we cannot draw a distinction based on where the tribal activity of providing water service to all of its lands occurs.

**AFFIRMED.**