MOORE, Chief Justice
(concurring specially).
Because the Poarch Band of Creek Indians and PCI Gaming Authority d/b/a Creek Casino Montgomery (hereinafter referred to collectively as “PBCI”) do not have a clear legal right to sovereign immunity in an Alabama state court from a dram-shop action, I concur in denying their petition for a writ of mandamus. I write separately to examine the law on this question of first impression.

I.Facts and Procedural History

On August 8, 2011, shortly after leaving Creek Casino Montgomery, a casino operated on land owned by the Poarch Band of Creek Indians, Elfago Ramirez crossed the centerline on Wares Ferry Road and collided head-on with a vehicle traveling in the opposite lane. The collision caused injuries to Adrianne Kelly and Edward Gilbert (“the plaintiffs”), the occupants of the other vehicle. On March 21, 2013, in the Montgomery Circuit Court, the plaintiffs sued PBCI and other defendants alleging that PBCI furnished alcoholic beverages to Ramirez knowing that he was visibly intoxicated.
Citing tribal immunity, PBCI moved to dismiss the action.[1] The trial court denied the motion, finding that PBCI’s agreement to maintain dram-shop insurance as a condition of receiving a liquor license for Creek Casino Montgomery constituted an express waiver of any immunity from suit based on a violation of Alabama’s Dram Shop Act. § 6-5-71, Ala.Code 1975. PBCI then petitioned for a writ of mandamus on the ground of immunity.

II.Standard of Review

“[A] petition for a writ of mandamus is an appropriate means for seeking review of an order denying a claim of immunity.” Ex parte Butts, 775 So.2d 173, 176 (Ala.2000). “Mandamus is a drastic and extraordinary writ that will be issued only when there is: 1) a clear legal right in the petitioner to the order sought; 2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; 3) the lack of another adequate remedy; and 4) properly invoked jurisdiction of the court.” Ex parte United Serv. Stations, Inc., 628 So.2d 501, 503 (1993).

III.Analysis

A. ' Tribal Sovereign Immunity
“Indian tribes have long been recognized as possessing the common-law immunity from suit traditionally enjoyed by sovereign powers.” Santa Clara Pueblo v. Martinez, 436 U.S. 49, 58, 98 S.Ct. 1670, 56 L.Ed.2d 106 (1978). Thus, “an Indian tribe is subject to suit only where Congress has authorized the suit or the tribe has waived its immunity.” Kiowa Tribe of Okla. v. Manufacturing Techs., Inc., 523 U.S. 751, 754, 118 S.Ct. 1700, 140 L.Ed.2d 981 (1998). Because the plaintiffs do not contend that dram-shop actions by private parties against Indian tribes have been authorized by Congress, the only issue before the Court is whether PBCI has waived its immunity from such actions.
“It is settled that a waiver of sovereign immunity ‘ “cannot be implied but must be unequivocally expressed.” ’ ” Santa Clara Pueblo, 436 U.S. at 58 (quoting United States v. Testan, 424 U.S. 392, 399, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976), quoting *226 in turn United States v. King, 395 U.S. 1, 4, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969)). Such a waiver must be “clear.” Oklahoma Tax Comm’n v. Citizen Band of Potawatomi Indian Tribe of Okla., 498 U.S. 505, 509, 111 S.Ct. 905, 112 L.Ed.2d 1112 (1991). “Absent an effective waiver or consent, it is settled that a state court may not exercise jurisdiction over a recognized Indian tribe.” Puyallup Tribe, Inc. v. Department of Game of Wash., 433 U.S. 165, 172, 97 S.Ct. 2616, 53 L.Ed.2d 667 (1977).

B. Dram Shop Act and Sovereign Immu- . nity

A person injured by someone who is intoxicated may sue for damages anyone who caused the intoxication of the party causing the injury by furnishing “liquor or beverages” contrary to law. § 6-5-71, Ala. Code 1975. Regulations of the Alabama Alcoholic Beverage Control Board (“the ABC Board”) “have the full force and effect of law.” § 28-3-49(a), Ala.Code 1975. “No ABC Board on-premises licensee, employee or agent thereof shall serve any person alcoholic beverages if such person appears, considering the totality of the circumstances, to be intoxicated.” Reg. 20-X-6-.02(4),. Ala. Admin. Code (ABC Board).
Although the complaint states a cause of action against PBCI under the Dram Shop Act and certain ABC Board regulations, PBCI argues that the defense of sovereign immunity based on its tribal status requires dismissal of this action. Although the United States Supreme Court has questioned “the wisdom of perpetuating the doctrine” of tribal immunity, Kiowa Tribe, 523 U.S. at 758, the plaintiffs do not attack immunity per se. They argue, instead, that PBCI waived its immunity by subjecting itself to licensing by the ABC Board. They point in particular to the financial-responsibility provision in the ABC Board regulations that is reprinted in substantial part in the pre-application packet for an ABC Board license:
“(1) All retail licensees of the ABC Board shall maintain, at all times, liquor liability (dram shop) insurance described below and shall comply with the following conditions of requirements of Financial Responsibility.
“(a) Prior to the issuance or renewal of any retail alcoholic beverage license, each applicant must provide the ABC Board with sufficient information that it has liquor liability (dram shop) insurance coverage in the amount of at least one hundred thousand dollars ($100,-000.00) per occurrence, exclusive of, and separate from, any attorney fees or other costs incurred in the defense of any claim asserted against the insured.”
Reg. 20-X-5-.14, Ala. Admin. Code (ABC Board) (“Requirements Of Financial Responsibility By Licensees”) (emphasis added). See PBCI’s brief, Exhibit 1. The first question on the formal application for a retail liquor license asks in oversize letters: “Has applicant complied with ABC Regulation # 20-X-5-.14 regarding financial responsibility?” PBCI circled “Y” on its application. Plaintiffs’ brief, Exhibit 5.
The plaintiffs question how PBCI can be required to maintain dram-shop insurance for “the defense of any claim asserted against the insured” and yet claim immunity in a civil action that implicates the protection provided by that insurance. The plaintiffs contend that allowing tribal immunity to shield PBCI from a dram-shop action would nullify the insurance provision of the state liquor law that PBCI agreed to observe as a condition for licensing. In short, the plaintiffs argue that PBCI’s acceptance of the financial-responsibility provision as a condition for obtaining an alcoholic-beverage license operates *227 as an express waiver of the defense of sovereign immunity in a dram-shop action.
C. The No-Forum Conundrum[2]
Although PBCI stated in its motion to dismiss that the “[plaintiffs’ remedy, if any, lies in the tribal court established by the Defendant sovereign, [the Poarch Band of Creek Indians],” the Poarch Band Tribal Code indicates that a dram-shop action against PBCI in the tribal court would be ineffectual. Section ll-l-l(a), Poarch Band Tribal Code, empowers the Poarch Band Tribal Court to try “all civil causes of action and defenses thereto which are cognizable in the trial courts of the State of Alabama.” However, the immediately following section states: “The recognition of causes of action and defenses thereto which are cognizable in the trial courts of the State of Alabama is not and shall not be deemed a waiver of tribal sovereignty or jurisdiction with respect to the Tribe or Tribal Courts.” Section 11-l-l(b), Poarch Band Tribal Code. Thus, although the plaintiffs could formally file a dram-shop action in Poarch Band tribal court, PBCI would instantly have recourse to the defense of sovereign immunity. The Poarch Band Tort Claims Act, § 29-1-1 et seq., Poarch Band Tribal Code, does provide for a limited waiver of sovereign immunity, but it applies only to “an individual Gaming Facility patron,” § 29-1-3(e), Poarch Band Tribal Code, and excludes third-party claims such as the injuries suffered by plaintiffs on a state highway. § 29 — 2—3(f), Poarch Band Tribal Code. Thus, if the plaintiffs have no remedy against PBCI in a state court, they likely have no remedy against PBCI anywhere.
Courts in many jurisdictions have remarked on the unsettling fact that recognition of tribal immunity can leave accident victims without a remedy against tribal defendants. “[I]mmunity can harm those who are unaware that they are dealing with a tribe, who do not know of tribal immunity, or who have no choice in the matter, as in the case of tort victims.” Kiowa Tribe, 523 U.S. at 758. See also Three Affiliated Tribes of Fort Berthold Reservation v. Wold Eng’g, P.C., 476 U.S. 877, 893, 106 S.Ct. 2305, 90 L.Ed.2d 881 (1986) (noting “[t]he perceived inequity of permitting the Tribe to recover from a non-Indian for civil wrongs in instances where a non-Indian allegedly may not recover against the Tribe”); Cook v. Avi Casino Enters., Inc., 548 F.3d 718, 727 (9th Cir.2008) (lamenting that “an unjust result is reached that our law might better preclude”) (Gould, J., concurring); Filer v. Tohono O’Odham Nation Gaming, 212 Ariz. 167, 173, 129 P.3d 78, 84 (Ct.App.2006) (noting that tribal immunity from dram-shop actions “may be unsatisfactory to some and arguably is divorced from the realities of the modern world”); Foxworthy v. Puyallup Tribe of Indians Ass’n, 141 Wash.App. 221, 234, 169 P.3d 53, 59 (2007) (noting that “the current state of dram shop case law” involving tribal defendants may “tolerate inequities”).

D. Effect of Purchase of Insurance on Immunity

The mere acquisition of insurance by an entity having sovereign immunity does not constitute an express consent to be sued in a state court for policy benefits. The Poarch Band Tribal Code, for example, delineates a workers’ compensation plan of coverage for Poarch Band employees but allows enforcement only in tribal courts. §§ 35-4-1 & -4, Poarch Band Tribal Code. An employee “seeking any remedy in any *228 Non-Tribal forum” forfeits coverage. § 35-1-6(d), Poarch Band Tribal Code. The workers’ compensation title of the Poarch Band Tribal Code states that the Poarch Band “does not hereby waive its immunity from suit in state or federal court, or any other state or federal forum, for any purpose.” § 35 — 1—6(b), Poarch Band Tribal Code. See Sanderford v. Creek Casino Montgomery (No. 2:12-CV-455-WKW, Jan. 10, 2013) (M.D.Ala.2013) (dismissing on sovereign-immunity grounds action brought in federal court by Creek Casino Montgomery employee for workers’ compensation benefits). See also White Mountain Apache Tribe v. Industrial Comm’n of Ariz., 144 Ariz. 129, 696 P.2d 223 (Ct.App.1985) (holding that a tribe’s purchase of workers’ compensation insurance does not constitute an express waiver of sovereign immunity from a worker’s compensation action).
Similarly, the purchase of liability insurance by an agency of the Alabama state government does not of itself waive state immunity. “ ‘[A] governmental unit’s immunity from tort liability is unaffected by its procurement of insurance which purports to protect it from such liability.’ ” Thompson v. Druid City Hosp. Bd., 279 Ala. 314, 315, 184 So.2d 825, 826 (1966) (quoting 68 A.L.R.2d 1437 (1959)). See also Alabama State Docks v. Saxon, 631 So.2d 943, 946 (1994) (noting that “an intent to waive governmental immunity should not be presumed from the purchase of liability insurance”); Graves v. White Mountain Apache Tribe, 117 Ariz. 32, 570 P.2d 803 (Ct.App.1977) (holding that purchase of liability insurance by an Apache tribe did not waive the tribe’s governmental immunity).

E. Countervailing Factors

Courts that have addressed the issue uniformly hold that sovereign immunity protects Indian tribes from private dram-shop actions. See Furry v. Miccosukee Tribe of Indians of Fla., 685 F.3d 1224, 1233 (11th Cir.2012); Filer, 212 Ariz. at 173, 129 P.3d at 84; Foxworthy, 141 Wash. App. at 234, 169 P.3d at 58; Holguin v. Ysleta Del Sur Pueblo, 954 S.W.2d 843, 854 (Tex.App.1997). Recently Oklahoma reversed its contrary precedent. See Sheffer v. Buffalo Run Casino, PTE, Inc., 315 P.3d 359, 372 (Okla.2013) (rev’g Bittle v. Bahe, 192 P.3d 810 (Okla.2008)). Nevertheless, certain countervailing factors argue for denying PBCI’s petition for a writ of mandamus.

1. Immunity is Minimal in the Area of Alcohol Regulation

Although “[t]he policy of leaving Indians free from state jurisdiction and control is deeply rooted in the Nation’s history,” Rice v. Olson, 324 U.S. 786, 789, 65 S.Ct. 989, 89 L.Ed. 1367 (1945), and “tribal immunity is a matter of federal law and is not subject to diminution by the States,” Kiowa Tribe, 523 U.S. at 756, tribal immunity is at its weakest in the context of alcohol regulation. Although at one time federal law prohibited the possession or sale of alcoholic beverages in Indian territory, Congress in 1953 abrogated those provisions and instead gave the states authority to regulate and control the use of alcohol on tribal lands. 18 U.S.C. § 1161. Construing § 1161, the United States Supreme Court noted that “Congress has divested the Indians of any inherent power to regulate in this area.” Rice v. Rehner, 463 U.S. 713, 724, 103 S.Ct. 3291, 77 L.Ed.2d 961 (1983). “With respect to the regulation of liquor transactions, ... Indians cannot be said to ‘possess the usual accoutrements of tribal self-government.’ ” Id. (quoting McClanahan v. Arizona State Tax Comm’n, 411 U.S. 164, 167-68, 93 S.Ct. 1257, 36 L.Ed.2d 129 (1973)).
*229 “Because we find that there is no tradition of sovereign immunity that favors the Indians in this respect, and béeause we must consider that the activity in which Rehner seeks to engage potentially has a substantial impact beyond the reservation, we may accord little if any weight to any asserted interest in tribal sovereignty in this case.”
Rehner, 463 U.S. at 725. Because tribal immunity derives from tribal sovereignty, PBCI’s assertion of immunity to thwart state law in the area of alcohol regulation has “little if any weight,” especially when the activity whose regulation PBCI seeks to evade — overserving gaming customers — “has a substantial impact beyond the reservation.” 463 U.S. at 725.

2. The Covenant of Financial Responsibility

Even if, as other courts have held, the state’s power to regulate alcohol usage on tribal lands does not of itself authorize private dram-shop actions, the nature of the agreement PBCI made with the ABC Board constitutes a waiver of any residual immunity from such lawsuits. By purchasing dram-shop insurance as a condition for obtaining a liquor license, PBCI expressly agreed in writing to be “financially responsible” in damages for serving alcohol to any apparently intoxicated person. PBCI cannot both assume financial responsibility for compensating victims of its own wrongdoing and at the same time disclaim its responsibility for providing such compensation. An agreement to be financially responsible is an express declaration that excludes, i.e., waives, the alternative of being financially irresponsible. Otherwise, the assumption of financial responsibility would be meaningless. Compare C & L Enters., Inc. v. Citizen Band Potawatomi Tribe of Okla., 532 U.S. 411, 422, 121 S.Ct. 1589, 149 L.Ed.2d 623 (2001) (noting that an arbitration clause in a contract “ ‘would be meaningless if it did not constitute a waiver of whatever immunity [the Tribe] possessed’”) (quoting Native Village of Eyak v. GC Contractors, 658 P.2d 756, 760 (Alaska 1983)).[3]
No “magic words” are needed to waive sovereign immunity. A waiver that has “the requisite clarity,” C & L Enterprises, 532 U.S. at 418, need not, “to be deemed explicit ... use the words ‘sovereign immunity.’” Id. at 420-21 (quoting Sokaogon Gaming Enter. Corp. v. Tushie-Montgomery Assocs., 86 F.3d 656, 660 (7th Cir.1996)). See also Rosebud Sioux v. Val-U Constr. Co. of S. Dakota, 50 F.3d 560, 563 (8th Cir.1995) (“[WJhile the Supreme Court has expressed its protectiveness of tribal sovereign immunity by requiring that any waiver be explicit, it has never required the invocation of ‘magic words’ stating that the tribe hereby waives its sovereign immunity.”); Narragansett Indian Tribe v. Rhode Island, 449 F.3d 16, 25 (1st Cir.2006) (citing C & L Enterprises for the proposition that a court need not employ “talismanic phrases”).
In rejecting the assertion that a tribe may employ the doctrine of sovereign immunity to nullify an arbitration clause under Oklahoma law, the United States Supreme Court stated that “[the contract’s dispute resolution] regime has a real world objective; it is not designed for a game lacking practical consequences.” C & L Enterprises, 532 U.S. at 422. Likewise, in this case the financial-responsibility cove *230 nant PBCI made with the ABC Board as a condition for obtaining a liquor license had “a real world objective”: the protection of the general public from drunk drivers improvidently overserved in the casino. This agreement “was not designed for a game lacking practical consequences,” as PBCI implausibly contends.
Just as “[t]o agree to be sued is to waive any immunity one might have from being sued,” Sokaogon, 86 F.3d at 659, so to agree to be financially responsible is to waive any immunity one might have to be financially irresponsible. To claim immunity in this context is to assert in “the real world” that PBCI has no coverage for dram-shop incidents. See Koscielak v. Stockbridge-Munsee Cmty., 340 Wis.2d 409, 422, 811 N.W.2d 451, 458 (Ct.App.2012) (“[A]n insurer is not liable unless its insured is.”). But such an assertion functions as a repudiation of the legal requirement — to which PBCI has assented — that “cmrent insurance coverage exists” that has not “been cancelled or otherwise is not in force for any reason.” Reg. 20-X-5-.14(2), Ala. Admin. Code (ABC Board). Again, the requirement of dram-shop coverage is not a mere paper formality with no effect in the real world, a meaningless arrangement “lacking practical consequences.” “It is ludicrous to contend that anyone can enter into an indemnifying contract and then refuse to fulfill the contract against the injured party, contending in substance that there is no basis for the suit for' there was no risk to be insured.” Beach v. City of Springfield, 32 Ill.App.2d 256, 261, 177 N.E.2d 436, 439 (1961).

3. The No-Forum Conundrum Revisited

The absence of a tribal forum to hear dram-shop actions weighs against a finding of immunity. In refusing to infer a private cause of action for enforcement of the Indian Civil Rights Act, 25 U.S.C. §§ 1301-1304, the United States Supreme Court reasoned that such a remedy was not necessary because “[tjribal forums are available to vindicate rights.” Santa Clara Pueblo, 436 U.S. at 65. The Court forthrightly asserted: “Tribal courts have repeatedly been recognized as appropriate forums for the exclusive adjudication of disputes affecting important personal and property interests of both Indians and non-Indians.” Id. Because the Poarch Band has structured its Tribal Code to prevent dram-shop claims from being heard in the tribal court, its claim of immunity from a state-court action is accordingly diminished. See Dry Creek Lodge, Inc. v. Arapahoe & Shoshone Tribes, 623 F.2d 682 (10th Cir.1980) (reversing a trial court’s order that dismissed a case on immunity grounds because no tribal or other forum existed to settle the dispute).

TV. Conclusion

The doctrine of tribal immunity, intended in part to shield Indian tribes from exploitation by outsiders, is not also a sword tribes may wield to victimize outsiders. Pushing the doctrine to illogical extremes and employing it after the fact to repudiate freely assumed legal obligations must ultimately result in discrediting the doctrine itself. “Indian scholars ... have been warning tribal leaders and counsel for decades that if they do not solve the no-forum conundrum, someone else will— either Congress or the federal courts.” Matthew L.M. Fletcher, (Re)Solving the Tribal No-Forum Conundrum: Michigan v. Bay Mills Indian Community, 123 Yale L.J. Online 311, 314 (2013).
Because PBCI’s formal covenant to assume financial responsibility in dram-shop actions constitutes an explicit waiver of its sovereign immunity from liability for such actions, I concur in denying PBCI’s peti *231 tion for a writ of mandamus ordering the trial court to dismiss this action on the ground of tribal immunity.

. PCI Gaming Authority, wholly owned by the Poarch Band and chartered under its tribal laws, shares the tribe’s immunity. Freeman-ville Water Sys. Inc. v. Poarch Band of Creek Indians, 563 F.3d 1205, 1207 n. 1 (11th Cir.2009).

. See Matthew L.M. Fletcher, (Re)Solving the Tribal No-Forum Conundrum: Michigan v. Bay Mills Indian Community, 123 Yale L.J. Online 311 (2013).

. Oklahoma statutes allow for the enforcement of predispute arbitration agreements. See Okla. Stat. 12, § 1851 et seq.