[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 20-10173
Non-Argument Calendar
_____

D.C. Docket No. 0:19-cv-62591-BB

EGLISE BAPTISTE BETHANIE DE FT. LAUDERDALE, INC.,
a Florida Not-For-Profit Corporation,
ANDY SAINT-REMY,

                                          Plaintiffs-Appellants,

versus

SEMINOLE TRIBE OF FLORIDA,
AIDE AUGUSTE,

                                          Defendants-Appellees.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(August 10, 2020)

Before WILSON, MARTIN, and ANDERSON, Circuit Judges.

PER CURIAM:

Before the district court, Eglise Baptise Bethanie De Ft. Lauderdale, Inc., and Andy Saint-Remy (plaintiffs) sued the Seminole Tribe of Florida and Aide Auguste (defendants), alleging various causes of action including claims under 18 U.S.C. § 248.  The Tribe moved for dismissal under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, arguing that, because it is a federally recognized Indian tribe, it was entitled to tribal sovereign immunity. Auguste sought dismissal as well and argued, in part, that the plaintiffs' allegations involved non-justiciable questions of internal church governance.  The district court agreed with the defendants and dismissed the action.  This appeal followed. We affirm the district court.

## DISCUSSION

### I.

We write for the benefit of the parties and thus assume their familiarity with the facts.  Turning to the merits, we consider first the district court's dismissal of the plaintiffs' claims against the Tribe.  We review a district court's dismissal of a complaint due to tribal sovereign immunity de novo.  *Furry v. Miccosukee Tribe of Indians of Fla.*, 685 F.3d 1224, 1227–28 (11th Cir. 2012).

"Indian tribes benefit from the same common-law immunity from suit traditionally enjoyed by sovereign powers."  *Williams v. Poarch Band of Creek Indians*, 839 F.3d 1312, 1317 (11th Cir. 2016) (internal quotation mark omitted).

However, tribal sovereign immunity is not absolute; tribes are "domestic dependent nations" and "are subject to plenary control by Congress." *Michigan v. Bay Mills Indian Cmty.*, 572 U.S. 782, 788 (2014).  Therefore, suits against tribal entities are barred by tribal sovereign immunity, "unless the plaintiff shows either a clear waiver of that immunity by the tribe, or an express abrogation of the doctrine by Congress." *Williams*, 839 F.3d at 1317.

Here, the underlying suit fails to satisfy either prerequisite and is thus barred.  First, everyone agrees Seminole Tribe did not expressly waive immunity from suit.  *See Sanderlin v. Seminole Tribe of Fla.*, 243 F.3d 1282, 1286 (11th Cir. 2001) ("[W]aivers of tribal sovereign immunity cannot be implied on the basis of a tribe's actions, but must be unequivocally expressed.").  And second, § 248 does not evidence any clear and unequivocal Congressional intent to abrogate tribal sovereign immunity.  *See Furry*, 685 F.3d at 1233 ("[C]ongressional abrogation must come from 'the definitive language of the statute itself'[;] . . . 'legislative history and inferences from general statutory language are insufficient.'").

That the plaintiffs allege criminal violations under § 248 cannot change our conclusion; where tribal sovereign immunity applies, it "bars actions against tribes regardless of the type of relief sought." *Freemanville Water Sys., Inc. v. Poarch Band of Creek Indians*, 563 F.3d 1205, 1208 (11th Cir. 2009).  Also unavailing is the plaintiffs' contention that tribal sovereign immunity is inapplicable here

3

because the alleged conduct occurred off-reservation.  "To date, [the Supreme Court has] sustained tribal immunity from suit without drawing a distinction based on where the tribal activities occurred" nor has the Court "drawn a distinction between governmental and commercial activities of a tribe."  *Kiowa Tribe of Okla. v. Mfg. Techs., Inc.*, 523 U.S. 751, 754–55 (1998); *see also Bay Mills Indian Cmty.*, 572 U.S. at 800 (discussing *Kiowa* and quoting its relevant holding).

In short, Congress knows how to expressly subject an Indian tribe to private suit in state or federal court; it did not do so when it enacted § 248.  *See Furry*, 685 F.3d at 1233.  Seminole Tribe is entitled to tribal sovereign immunity and was appropriately dismissed from this suit.

## II.

Next, we turn to the plaintiffs' claims against Auguste.  We review de novo a district court's legal conclusions underlying its dismissal of a complaint for lack of jurisdiction, and we review the district court's "findings of jurisdictional facts for clear error."  *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1328 (11th Cir. 2013).

"[R]eligious controversies are not the proper subject of civil court inquiry." *Serbian E. Orthodox Diocese for U.S. and Can. v. Milivojevich*, 426 U.S. 696, 713 (1976).  We have long recognized that both the Establishment and Free Exercise Clauses require a "prohibition on judicial cognizance of ecclesiastical disputes."

*Crowder v. S. Baptist Convention*, 828 F.2d 718, 721 (11th Cir. 1987). "By adjudicating religious disputes, civil courts risk affecting associational conduct and thereby chilling the free exercise of religious beliefs." *Id.* And "by entering into a religious controversy and putting the enforcement power of the state behind a particular religious faction, a civil court risks 'establishing' a religion." *Id.*

The interplay between these two constitutional provisions generally requires that we refrain from adjudicating matters involving "theological controversy, church discipline, ecclesiastical government, or the conformity of the members of the church to the standard of morals required of them." *Id.* at 722. Moreover, we "are bound to accept the decisions of the highest judicatories of a religious organization of hierarchical polity on matters of discipline, faith, internal organization, or ecclesiastical rule, custom, or law." *Milivojevich*, 426 U.S. at 713.

The plaintiffs claim that the district court erred in dismissing the claims against Auguste because their claim—rather than involving ecclesiastical disputes—is merely a property dispute. That framing ignores two threshold issues. Before reaching the plaintiffs' § 248 claim, a court would need to determine whether Auguste was the rightful successor to the church's leadership and, if she was, whether Auguste had the authority to exclude the plaintiffs from the church's property. Answering these questions would require us to inquire into church rules, policies, and decision-making and questions of church governance are manifestly

5

ecclesiastical.  *See id.* at 717 ("[Q]uestions of church discipline and the composition of the church hierarchy are at the core of ecclesiastical concern.").

Auguste's decision to exclude the plaintiffs from church property and the related events are part and parcel of ecclesiastical concerns (e.g., matters of church governance, administration, and membership).  The adjudication of these issues would "excessively entangl[e] [us] in questions of ecclesiastical doctrine or belief"—the very types of questions we are commanded to avoid.  *See Crowder*, 828 F.2d at 722 (footnote omitted).

Summed up, the district court correctly determined that it could not adjudicate the claim against Auguste because the dispute was "strictly and purely ecclesiastical in its character."  *See Milivojevich*, 426 U.S. at 713.  The claim against Auguste was appropriately dismissed.

We therefore **AFFIRM** the district court's dismissal of the plaintiffs' complaint.

6